**Affirmed in part and reversed in part and Opinion filed July 10, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00743-CV

---

### GEORGE JOSEPH ASSETS, LLC, AND THE ACKEL HEIRS (GEORGE ACKEL, III, ADAM A. ACKEL, ALANA ACKEL TALLO AND ALEXANDER ACKEL), Appellants

### V.

### JERILYN LEA CHENEVERT, F/K/A JERILYN LEA ACKEL AND J CHENEVERT PROPERTIES, LLC, Appellees

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2013-06084**

---

## O P I N I O N

The claims in this case stem from the conveyance of real commercial property from appellants to appellees in order to effectuate a settlement. Following a two-and-a-half-day bench trial, the trial court awarded compensatory and exemplary damages jointly and severally against appellants George Joseph Assets, LLC (GJA)

and the Ackel Heirs[1] (collectively "the Ackels") for fraud based on nondisclosure. The trial court also awarded damages and attorneys' fees for breach of an indemnity provision contained in a consent judgment. On appeal, the Ackels contend that the trial court erred in awarding any damages based on fraud because they had no duty to disclose information to appellees Jerilyn Lea Chenevert and J Chenevert Properties, LLC (collectively "Jerilyn") in the absence of a fiduciary relationship. The Ackels also challenge the damages awarded to indemnify Jerilyn because they contend no evidence established that Jerilyn actually paid the damages to trigger the indemnification obligation, and because the indemnification clause is unenforceable or was not breached.

We conclude that the trial court properly awarded compensatory and exemplary damages for fraud based on a failure to disclose. A duty to disclose can arise in the absence of a fiduciary relationship where new information makes a prior representation by a party untrue. The evidence supports the trial court's finding that information should have been disclosed to Jerilyn before closing on the conveyance. The evidence also supports the trial court's award of indemnity damages and attorneys' fees because the Ackels agreed in the consent judgment to indemnify Jerilyn for liabilities or claims of GJA's creditors. The trial court heard evidence of two liabilities that were due and owing before closing on the conveyance. The evidence also supports the damages awarded by the trial court, with the exception of two awards of damages for fraud. For those two awards, we suggest a remittitur as explained below. We therefore affirm the trial court's judgment in part and reverse in part.

---

[1] George Ackel, III, Adam A. Ackel, Alana Ackel Tallo, and Alexander Ackel.

2

The facts viewed in the light most favorable to the trial court's judgment are as follows.[2] George Ackel, Jr. owned and operated GJA. GJA in turn owned several commercial buildings and real estate in Texas and Louisiana. In 2009, George died intestate in Louisiana. George's survivors included his estranged wife, Jerilyn, and his four adult children from two prior marriages, the Ackel Heirs. GJA became an asset of George's estate, and Adam Ackel managed GJA.

When George died, he and Jerilyn had been married for seven years but were in the process of a divorce. Because George owned real property in both Texas and Louisiana, probate proceedings were filed in both states. In the Louisiana proceeding, Jerilyn challenged the enforceability of a prenuptial agreement she had signed before marrying George. The Louisiana courts upheld the prenuptial agreement, ruling that Jerilyn had no community interest in George's assets in Louisiana. The probate proceedings in both states resulted in protracted litigation between Jerilyn and the Ackels. In an effort to settle the litigation, Jerilyn and the Ackels mediated their dispute and signed a mediated settlement agreement on December 5, 2011.

As a result of the mediation, the Ackels agreed to convey to Jerilyn a one-acre parcel of commercial real estate owned by GJA. The one-acre parcel, which the parties call "the outparcel," was part of a seventeen-acre tract of commercial real estate located off of the Katy Freeway in Houston. Garden Ridge Pottery leased and operated a store on the remaining sixteen acres. The outparcel contained the shell of a 10,000 square foot building, part of which GJA had leased to Excel Urgent Care.

---

[2] *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005) ("[A]ppellate courts must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.").

3

Under the lease, GJA agreed to pay Excel $100,000 for tenant improvements, payable in four equal payments of $25,000, in order to finish out the space. Excel agreed to pay rent of $8,666.67 per month for the first year, and gradually increasing monthly rent over the following nine years. The settlement between Jerilyn and the Ackels provided that Jerilyn would take the property subject to any current leases, which would include the Excel lease.

The parties also agreed at the mediation that Jerilyn would remain living in a condominium George owned in Houston located on Fairdale Lane, provided that she obtain refinancing of the mortgage within 61 days of the closing on the outparcel. If Jerilyn could not obtain the necessary financing for the condo, it would revert back to the Ackels.

The court handling the Texas probate proceeding signed a consent judgment based on the mediated settlement agreement on May 24, 2012. In the consent judgment, the parties agreed in pertinent part as follows:

> IT IS HEREBY ORDERED ADJUDGED AND DECREED that the original Mediated Settlement Agreement dated December 5, 2011, (hereinafter the "MSA") [attached] hereto as Exhibit "A", is hereby made a judgment of this Court and are [sic] fully enforceable at law as if the provisions in said agreements were ordered by this Court directly.
> . . .
> IT IS FURTHER ORDERED that the Ackel heirs indemnify Jerilyn Lea Ackel from liabilities or claims from any of the Estate's LLC and/or creditors with the exception of the mortgage on the condo at Houston, Texas, unless she relinquishes the property on day 61 if she cannot obtain refinancing on the condo, as hereinafter stipulated in this Consent Judgment.
>
> . . .
>
> IT IS FURTHER ORDERED . . . that Jerilyn Lea Ackel shall pay all TI (Tenant Improvement) obligations to the Ackel Heirs at the closing of the commercial property in accordance with the terms of the lease for the existing tenant on the property and in accordance with the

4

original MSA; the Ackel Heirs will substantiate all TI obligations upon payment by Jerilyn Ackel of the TI by a release and indemnification at the closing. In the event Jerilyn Ackel does not have funds to pay the TI, there will be no closing. The property tax for the commercial property is prorated as of the date of the closing. The lease on the property will be turned over on the day of the closing.

. . .

IT IS FURTHER ORDERED that any and all outstanding claims from the lease of the commercial property will be resolved prior to closing to effectuate clear title and purchase of title insurance. All settlement documents regarding the settlement of any claims between the Ackel Heirs and the tenants will be provided at closing. Any settlement regarding the current tenant claims against the commercial property will not require additional payment from Jerilyn Lea Ackel or subject her to any liability.

By June 2012, and before the closing on the outparcel, GJA and its tenant Excel became involved in litigation alleging Excel's nonpayment of rent, GJA's nonpayment of $100,000 for tenant improvements,[3] and damage resulting from water penetration to the building. Four months later, in October 2012, GJA and Excel settled the lawsuits by executing a confidential settlement agreement. Under the terms of the agreement, Excel received a complete rent abatement through May 31, 2013, as reflected in an addendum to the lease agreement that the parties referred to as Addendum No. 3. Excel also received forgiveness of past-due rents owed "from the inception of the Lease Agreement through May 31, 2013." The parties agreed that these rent changes satisfied GJA's obligation to pay for tenant improvements. The agreement further provided that GJA would fix any continuing water penetration problems. The owner of Excel testified that GJA asked that the settlement be designated confidential, though Adam Ackel testified he was not sure

---

[3] The lawsuit filed by Excel asserted that GJA had not paid for the tenant improvements as required under the lease.

5

who wanted the agreement designated confidential.

On November 20, 2012, over a month after GJA and Excel settled their dispute, the Ackels and Jerilyn closed on the conveyance of the outparcel. Believing GJA had paid $100,000 to Excel for tenant improvements, Jerilyn tendered $100,000 at closing to the Ackels for the reimbursement of the Excel tenant improvements.[4] Jerilyn testified that she expected to begin receiving rent of $8,666.67 per month, increasing monthly thereafter, from the Excel lease. Jerilyn was given an acknowledgement and release of claim for tenant improvements executed by Excel, which stated that the sums due for tenant improvements had been received and paid in full. Adam conceded at trial, however, that GJA had not actually paid $100,000 in cash to Excel and that he did not disclose to Jerilyn the confidential settlement agreement between GJA and Excel, the rent abatement, or Addendum No. 3. He also did not disclose to Jerilyn that Excel alleged continued water penetration problems in the leased space, though the Excel representative stated he believed he sent pictures of water damage after rains to Adam. Adam executed an affidavit on behalf of GJA for the closing stating that no claims or lawsuits remained pending.

Shortly after closing, Excel did not pay the rent Jerilyn was expecting. Jerilyn then learned of the rent abatement given to Excel and the continuing water penetration problems. Jerilyn negotiated a further reduction in long-term rent with Excel in order to obtain the resumption of rental payments. Jerilyn stated she gave up $51,000 in rent payments over a three year period, and the lease modification she executed with Excel shows she gave up over $52,000. Jerilyn paid $49,041 to have the water penetration problems corrected.

Jerilyn also received two demands for payment for amounts owed by GJA

---

[4] Jerilyn obtained a $700,000 line of credit to pay the $100,000 for tenant improvements. The line of credit was a construction loan and could only be used for construction purposes.

prior to the closing. GJA had agreed to pay a commission to National UC Realty and NAI Houston for procuring the Excel lease. The commission of $45,033.66 was due by June 2012 when Excel opened for business, but GJA did not pay it and Jerilyn had no knowledge of the commission before closing. She received a demand from the realty company to pay the commission, though she had not yet paid it at the time of trial. In addition, GJA failed to pay a fee owed to WM Architectural Design Foam prior to closing. Jerilyn received a demand to pay a judgment lien WM had filed against the property; she negotiated regarding the amount and paid $3,000 to settle the claim.

Jerilyn testified that as a result of the rent abatement given to Excel, she had no rent coming in and no income. Having paid for the water penetration repairs and paid $3,000 to WM, Jerilyn stated she was unable to refinance the condo and thus had to allow it to revert to the Ackels after the closing.

Jerilyn filed this lawsuit against the Ackels, asserting claims including for common-law fraud, statutory fraud under section 27.01 of the Texas Business and Commerce Code, and breach of an indemnity agreement. The parties tried the case to the bench, and the trial court found in favor of Jerilyn on her claims. Although no findings of fact or conclusions of law were made or requested, the trial court's final judgment provides:

- The plaintiffs are entitled to judgment against defendants for breach of contract and for fraud and for damages;

  . . . .

- defendants' [sic] committed fraud in not disclosing to plaintiffs the Excel settlement and then requiring plaintiffs to pay One Hundred Thousand Dollars and 00/100 ($100,000.00) for tenant improvements and for not disclosing the water penetration and such fraudulent conduct was committed knowingly. One

7

Hundred Thousand and 00/100 Dollars ($100,000.00) in exemplary damages is awarded to the plaintiffs.

The trial court awarded the following amounts of compensatory damages to Jerilyn: (1) $45,033 as a result of the defendants' failure to indemnify Jerilyn for amounts due to National UC Realty and NAI Houston; (2) $3,000 as a result of the defendants' failure to indemnify Jerilyn for the amount paid to WM Architectural Design Foam; (3) $100,000 as a result of fraud related to nondisclosure of the rent abatement in lieu of paying for tenant improvements; (4) $51,996 for loss of rental income due to the nondisclosure of the settlement with Excel; (5) $49,041 for the nondisclosure of known water penetration in the Excel leased space; and (6) $332,000 for the loss of the condo in Houston. The trial court awarded attorneys' fees and pre- and post-judgment interest. The Ackels timely filed this appeal.

## ANALYSIS

In their first five issues, the Ackels argue the trial court erred in finding fraud because they contend they had no duty to disclose in the absence of a fiduciary duty. In issue four, the Ackels further challenge the sufficiency of the evidence supporting the damages awarded. In their sixth issue, the Ackels argue that there is no basis for awarding attorneys' fees, making the award "manifest reversible error." In issue seven, the Ackels contend the trial court erred in finding a breach of the indemnification clause in the consent judgment. We address the first five issues together as they concern the Ackels' challenge to the findings of fraud by failure to disclose and resulting damages. We then address the issues regarding breach of the indemnification clause and attorneys' fees.[5]

---

[5] We note that the argument section of the Ackels' briefing does not readily correlate to the issues listed in the issues presented section of their brief. *See* Tex. R. App. P. 38.1(i) (brief must "contain a clear and concise argument for the contentions made"). We will address the merits of the arguments that we can reasonably, yet liberally, ascertain from the argument section of their

8

## I.     Standards of review

When, as in this case, neither party requests findings of fact and conclusions of law following a bench trial, we will imply all findings necessary to support the trial court's judgment. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *see In re Estate of Parrimore*, No. 14-14-00820-CV, 2016 WL 750293, at *5 (Tex. App.—Houston [14th Dist.] Feb. 25, 2016, no pet.).  If the record contains the reporter's record, implied findings may be challenged on appeal for legal and factual sufficiency in the same manner as a challenge to jury findings or express findings of fact.  *See id.*

In this case, the trial court did not issue separate findings of fact and conclusions of law, but did include in its judgment an express finding that the Ackels committed fraud by not disclosing the settlement with Excel while still requiring Jerilyn to pay the $100,000 for tenant improvements, and by not disclosing the continuing water penetration issues in the Excel leased space.  Under Rule 299a, a trial court should not include findings of fact in its judgment.  *See* Tex. R. Civ. P. 299a ("Findings of fact shall not be recited in a judgment."); *Estate of Parrimore*, 2016 WL 750293, at *5.  Because the record does not contain any additional findings of fact or conclusions of law, however, the findings in the judgment have probative value and will be treated as valid findings.  *Estate of Parrimore*, 2016 WL 750293, at *5 (citing *In re C.A.B.*, 289 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2009, no pet.)).  Any omitted findings that are supported by the evidence will be implied in favor of the trial court's judgment.  *Id.*  Where, as here, the record contains a complete reporter's record of the trial, the findings will not be disturbed if there is

---

brief.    *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) (courts of appeals should construe briefing "reasonably, yet liberally, so that the right to appellate review is not lost by waiver") (internal quotations omitted).

9

any evidence of probative force to support them. *Id.* We must uphold the trial court's judgment on any theory of law applicable to the case if the evidence supports the trial court's findings. *Id.*

In conducting a sufficiency review, we consider the evidence in the light most favorable to the challenged findings and indulge every reasonable inference that supports them. *Univ. Gen. Hosp., L.P. v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* at 551. We credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* When an appellant attacks a finding on an issue on which he did not have the burden of proof, the appellant must demonstrate that no evidence supports the adverse finding. *Id.* at 550. Evidence is legally insufficient to support a finding when (1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Shields Ltd. P'ship*, 526 S.W.3d at 480.

In reviewing the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of and contrary to the challenged findings. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may set aside the verdict for factually insufficient evidence only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Ellis*, 971 S.W.2d at 407. The party asserting the evidence is factually insufficient must establish that the finding is against the great weight and preponderance of the evidence. *Dow Chem.*

10

*Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In assessing the evidence, we do not act as a factfinder; we may not pass on the credibility of the witnesses or substitute our judgment for that of the factfinder. *Estate of Parrimore*, 2016 WL 750293, at \*5. Instead, the trial court, as the trier of fact in this case, is the "sole judge of the credibility of the witnesses and the weight to afford their testimony." *Id.*

## II. The evidence is legally and factually sufficient to support the trial court's finding of fraud by nondisclosure.

In their first three issues, the Ackels argue: (1) the trial court erred in finding a fiduciary relationship between Jerilyn and the Ackels; (2) because the trial court erred in finding a fiduciary relationship existed, it also erred in finding a duty to disclose to Jerilyn; and (3) the trial court's finding of fraud based on a duty to disclose "was manifest reversible legal error since there was no fiduciary relationship between the parties and [the Ackels] had no duty to disclose, ergo, there was no fraud."[6]

The trial court did not find that a fiduciary relationship existed among the parties. Nor is there any evidence or argument by counsel in the trial record relating to a fiduciary relationship among the parties. The Ackels' contention that the trial court made an erroneous finding of a fiduciary relationship is, therefore, misplaced.

A finding of a fiduciary relationship is not necessary to establish fraud in this case. The general rule provides that failure to disclose information will not constitute fraud unless there is first a duty to disclose the information. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). If a duty to disclose exists, a party who fails to disclose will be charged with the equivalent of making a false representation.

---

[6] We construe the Ackels' argument of "manifest reversible legal error" as a challenge to the legal sufficiency of the evidence to support a duty to disclose.

11

*See id.*; *see also Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986) ("When the particular circumstances impose on a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation.").

In *Anderson, Greenwood & Co. v. Martin*, we identified three circumstances other than a fiduciary relationship in which a duty to disclose exists. *See* 44 S.W.3d 200, 212 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). First, when a party voluntarily discloses information, the party has the duty to disclose the whole truth. *Id.* Second, if a party makes a representation, he has a duty to disclose new information when he is aware the new information makes the earlier representation misleading or untrue. *Id.* Finally, when a party makes a partial disclosure and conveys a false impression, the party has a duty to speak. *Id.*; *see also Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 670-71 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

In this case, Jerilyn contends that a duty to disclose existed because the second circumstance is present here: new information should have been disclosed to her because it made the Ackels' prior representations regarding reimbursement for tenant improvements untrue. Jerilyn testified that Adam told her in connection with the mediated settlement that GJA had to pay $100,000 to the tenant Excel to complete the build-out. He gave her the original lease with Excel showing that the tenant improvement payments were due in four equal installments payable on September 1, 2011, October 1, 2011, November 1, 2011, and December 1, 2011. The documents also indicated that Excel would pay rent of $8,666.67 per month, with increasing rent over the course of the multi-year lease. Jerilyn tendered $100,000 to the Ackels at the closing of the conveyance to reimburse them for the tenant improvements. Unbeknownst to Jerilyn, the Ackels had not paid Excel for

the tenant improvements, as required under the original lease, but instead entered into an addendum to the lease allowing for rent abatement until May 31, 2013 in lieu of the tenant improvement payments. The facts that Excel would not have to pay rent as stated in its original lease and that the Ackels had not compensated Excel in full for tenant improvements prior to closing[7] constituted new information that made the Ackels' prior statements to Jerilyn regarding rent amounts and payment for tenant improvements untrue. This evidence is legally and factually sufficient to support the trial court's finding of fraud for failing to disclose the Excel settlement and rent abatement. *See Anderson, Greenwood*, 44 S.W.3d at 214.

Moreover, the evidence supports the trial court's finding that the fraudulent decision not to disclose was made knowingly. Adam Ackel conceded under questioning by the court that he did not disclose this information to Jerilyn because of the confidentiality provision of the Ackels' agreement with Excel, nor did he tell her that information was being withheld based on confidentiality. Dr. Ogunro, the Excel representative, testified that it was GJA's idea to designate the settlement a confidential agreement. Thus, there is sufficient evidence that GJA deliberately chose to withhold the information from Jerilyn and in fact prevented her from gaining access to the information on her own inquiry.[8]

The evidence also supports the trial court's finding of fraud based on the Ackels' failure to disclose to Jerilyn the continuing water penetration issues in the

---

[7] In effect, the Ackels' agreement to a rent abatement until May 31, 2013 meant that Jerilyn had to part with more than the full amount due to Excel for tenant improvements: not only the $100,000 she paid the Ackels at closing, but also the sums she could not collect from Excel in rent between the November 20, 2012 closing and May 31, 2013.

[8] A letter sent from Jerilyn's attorney to Excel's attorney after the closing stated that she had asked Excel's attorney prior to the closing whether the terms of the settlement would affect the lease agreement. Excel's attorney would not discuss the matter because it was confidential. Jerilyn's attorney searched property records for any lease or lease addendum filings, but found no notice of any such filings.

Excel leased space. The Ackels stated in the consent judgment that any settlement regarding the Excel claims against the property would not require additional payment from Jerilyn. The settlement agreement between GJA and Excel provided that GJA would "continue its vigilance with respect to water penetration issues at the Lease Space upon proper notice and proof of water penetration. . . ." Dr. Ogunro from Excel testified that after the settlement agreement was executed, he sent pictures of continuing water penetration issues to Adam but the problem remained unresolved. Dr. Ogunro thus decided to "wait until the new landlady came and try to make our case with her." Jerilyn had to expend $49,041 to remedy the water penetration issues. Adam conceded he did not disclose the water penetration issues to Jerilyn. We conclude that the evidence is legally and factually sufficient to support the trial court's finding that the Ackels had a duty to disclose the Excel settlement allowing rent abatement and the ongoing water penetration issues. We overrule the Ackels' first three issues.

In their fifth issue, the Ackels contend that "[t]he trial court erred in awarding punitive/exemplary damages as there was no underlying fraud which is [a] necessary finding to support an award of punitive/exemplary damages and therefore was manifest reversible error and an abuse of discretion." The only argument the Ackels offer in support of this issue is that the trial court's finding of fraud was based on the "legally incorrect finding of a fiduciary duty between the parties," without which the Ackels had no duty to disclose and thus could not have committed fraud. As explained above, a fiduciary duty is not required to support a finding of fraud in this case. The evidence supports the trial court's finding of fraud committed knowingly. We therefore overrule the Ackels' fifth issue.

14

**III. The evidence is legally and factually sufficient to support all but two awards of fraud damages.**

In their fourth issue, the Ackels first challenge the award of compensatory damages with the global contention that the damages must fail "as the trial court was complete [sic] wrong on the applicable law regarding disclosure." Having addressed this argument above, we overrule this portion of issue four for the same reasons. The Ackels also challenge several of the damage awards for fraud on grounds that we construe as challenges to the factual sufficiency of the evidence. *See PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 511 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Actual damages for common-law fraud are either direct or consequential. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007). With respect to direct damages for common-law fraud, Texas recognizes two measures: "the out-of-pocket measure and the benefit-of-the-bargain measure. The out-of-pocket measure computes the difference between the value paid and the value received, while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009) (quoting *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998)). Consequential damages are "those damages which result naturally, but not necessarily, from the defendant's wrongful acts." *Sonnichsen*, 221 S.W.3d at 636 (internal quotations omitted).

The individual damage awards challenged by the Ackels include: $100,000 awarded for the Ackels' fraud in collecting that amount from Jerilyn for tenant improvements while not disclosing the rent abatement they gave Excel in lieu of paying for improvements; $51,996 awarded for loss of rental income due to

nondisclosure of the settlement with Excel; $49,041 awarded for the Ackels' nondisclosure of continuing water penetration problems that Jerilyn was required to repair after closing; and $332,000 awarded for the loss of the condo on Fairdale Lane. With regard to the $100,000 payment for tenant improvements, the Ackels point out that they complied with their obligation under the consent judgment to obtain a release and indemnification from Excel for the tenant improvement obligation, and that the settlement agreement with Excel was not due to be disclosed before the date of closing.

We agree with the Ackels that the evidence does not support the full award of $100,000 as fraud damages to Jerilyn, but for different reasons. By awarding Jerilyn $100,000, it appears the trial court utilized the out-of-pocket measure of damages. *See Sonnichsen*, 221 S.W.3d at 636 ("Out-of-pocket damages, which derive from a restitutionary theory, measure the difference between the value of that which was parted with and the value of that which was received."); *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 375 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). In doing so, the trial court did not accurately measure "the value of that which was received." It is undisputed that Jerilyn paid $100,000 at closing to reimburse GJA for the tenant improvement allowance owed to Excel under the GJA–Excel lease. The evidence also shows, however, that GJA paid for at least part of the tenant improvements by forgiving past-due rent that Excel owed GJA going back to October 2011. Excel, for its part, executed an acknowledgment and release stating that the tenant improvement obligation had been satisfied. Jerilyn therefore received some value from her $100,000 payment for tenant improvements other than zero, making an award of $100,000 excessive.

Jerilyn was harmed, however, because GJA discharged the remainder of its tenant improvement obligation by extending the rent abatement more than six

16

months past the date it knew Jerilyn would acquire the property. The damage to Jerilyn from the non-disclosure of this rent abatement is that she did not receive the benefit of her bargain: the value of the Excel lease as represented. Jerilyn expected to pay $100,000 to reimburse GJA for tenant improvements, and in exchange to obtain property with an existing lease under which she would be paid a certain amount of rent after the closing on November 20, 2012. Under the Excel lease disclosed to Jerilyn, she should have received $8,666.67 in rent from Excel for the month of December 2012, and $8,840.00 for the months of January, February, March, April, and May 2013. The rent abatement that GJA gave Excel in lieu of paying for tenant improvements meant that Jerilyn would receive none of this rent. The evidence supports a conclusion that the difference between the value of the property and lease as represented and the value Jerilyn received is $52,866.67. We therefore sustain the portion of issue four challenging the trial court's award of $100,000 as damages for the Ackels' fraud in collecting Jerilyn's reimbursement for tenant improvements while not disclosing the future rent abatement they gave Excel in lieu of paying for improvements.

The Ackels also challenge the award of $49,041, which Jerilyn paid to repair water penetration issues in the Excel leased space. The Ackels contend the water penetration issues were resolved as of the date of the settlement agreement between GJA and Excel, and that "[f]actually defendants were never put on further notice by Excel in between the time of the settlement and the time of the transfer to plaintiff that there were any further water penetration issues nor was any evidence presented of such at trial." To the contrary, Dr. Ogunro of Excel testified he believed he sent pictures of continued water penetration issues to Adam after the settlement agreement, but that Adam did nothing to resolve the problem. The trial court, as the finder of fact, was in the best position to judge the credibility of the witnesses and

determine whether notice of the problem was given to the Ackels and should have been disclosed to Jerilyn. *See Estate of Parrimore*, 2016 WL 750293, at *5. Jerilyn presented testimony and documentary evidence regarding the amount she paid to repair the water penetration issues. Costs of repair based on a failure to disclose the condition of property are proper consequential damages recoverable under a fraud theory. *See Formosa Plastics*, 960 S.W.2d at 49 n.1; *see Starlight, L.P./Xarin Austin I, Ltd. v. Xarin Austin I, Ltd.*, No. 03-97-00747-CV, 1999 WL 11213, at *4 (Tex. App.—Austin Jan. 14, 1999, no pet.) (mem. op.); *Wright v. Carpenter*, 579 S.W.2d 575, 578 (Tex. App.—Corpus Christi 1979, writ ref'd n.r.e.) (costs of repair are consequential damages for fraud). The evidence is factually sufficient to support the award of $49,041 for water penetration repair, and we overrule this portion of issue four.

The Ackels next challenge the award of $51,996 for loss of rental income, arguing that Jerilyn's decision to reduce Excel's rent further over the remainder of the lease was her own decision after closing and had "nothing to do with" the Ackels. There was evidence, however, that this decision was a consequence of the Ackels' failure to disclose both the rent abatement and the ongoing water penetration problems. Jerilyn testified that she negotiated the reduced rent in order get Excel to resume paying rent so that she would have money to repair the water penetration. Because of the rent abatement that was not disclosed, Excel had no obligation to pay rent for the first six months after Jerilyn acquired the property, which meant Jerilyn had no monthly income. In order to obtain cash flow to pay for water penetration repairs and maintain the Excel tenant, she negotiated a further reduction in rent over the course of three years. Jerilyn testified that she reduced the rent by $51,000, and the lease addendum she executed with Excel shows a reduction over a three year period of over $52,000. The trial court's award of $51,996 is within the range of

evidence presented and is a consequential damage recoverable for fraud. *See Sonnichsen*, 221 S.W.3d at 636 (defining consequential damages as "those damages which result naturally, but not necessarily, from the defendant's wrongful acts"); *see also Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983) (some evidence supported jury's finding of consequential damages because of evidence that damages resulted directly and naturally from reliance on misrepresentation). The evidence is factually sufficient to support the award of damages for loss of rental income, and we overrule this portion of issue four.

Finally, the Ackels challenge the $332,000 awarded for Jerilyn's loss of the Fairdale condo when she could not obtain financing. The Ackels argue Jerilyn failed to show at trial that she could not refinance because of the fraud, and that any rights she would have had to the condo were subject to the existing mortgage. We conclude Jerilyn did offer evidence of an inability to refinance. She testified that because she had paid $100,000 to the Ackels and then had no rent income coming in and had to pay for repairs to the Excel leased space, she was unable to qualify for a loan and could not obtain financing for the condo.

We agree with the Ackels, however, that the trial court erred in awarding Jerilyn the full value of the condo without accounting for the existing mortgage. Under the consent judgment, Jerilyn was awarded the condo subject to that mortgage. The evidence showed that the condo had a market value of between $340,000 and $400,000. Jerilyn testified that a mortgage of $260,000 remained due on the condo. Thus, the evidence supports an award of damages to Jerilyn for the loss of the condo in the amount of at most $140,000. Because the amount awarded for the value of the condo was excessive, we sustain this portion of issue four.

**IV.** **The evidence is legally and factually sufficient to support the damage awards for breach of the indemnity agreement.**

The trial court's judgment also includes two damage awards for breach of the indemnity agreement: $45,033 due and payable for the real estate commission on the Excel lease, and $3,000 paid to settle the WM Architectural Design Foam claim. In issue seven, the Ackels make what we ascertain to be challenges to the legal and factual sufficiency of the evidence supporting these damages.

We construe indemnity agreements under normal rules of contract construction. *Gulf Ins. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). Our goal is to ascertain and give effect to the parties' intent as expressed by the plain language used in the agreement. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017); *Basic Energy Servs., L.P. v. EXCO Res., Inc.*, No. 05-15-00667-CV, 2018 WL 564157, at *3 (Tex. App.—Dallas Jan. 26, 2018, no pet.) (mem. op.). Words in the agreement are to be given their ordinary or common meaning, unless the contract directs otherwise. *Primo*, 512 S.W.3d at 893. Once we have ascertained the intent of the parties based on the plain language of the agreement, the rule of strictissimi juris applies, such that the agreement will be strictly construed. *Basic Energy Servs.*, 2018 WL 564157, at *4.

One party may agree to indemnify another against liability or damages. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999); *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex. App.—El Paso 1993, writ denied). A cause of action on an indemnity from liability accrues when the liability has become fixed and certain, as by rendition of a judgment. *Ingersoll-Rand Co.*, 997 S.W.2d at 208; *Tubb*, 862 S.W.2d at 750. The indemnitee is entitled to recover when the liability becomes fixed and certain, regardless of whether the indemnitee has yet paid the claim. *Ingersoll-Rand Co.*, 997 S.W.2d at 208. A cause of action on an indemnity

20

from damages accrues when the indemnitee suffers damage or injury by being compelled to pay the judgment or debt. *Tubb*, 862 S.W.2d at 750. In *Tubb*, the court construed language in an agreement providing indemnity for "all debts and obligations, claims and demands" arising out of a transaction as broad language requiring indemnity for both damages and liability. *See id.* ("This is broad language, the plain meaning of which was that Tubb was undertaking to indemnify Bartlett not only whenever the latter suffered an actual loss or injury, but also at such time as his liability was determined, as by judgment or assessment."); *see also Ingersoll-Rand Co.*, 997 S.W.2d at 208 ("Broad language, like that in this contract, that holds the indemnitee 'harmless' against 'all claims' and 'liabilities' evidences an agreement to indemnify against liability.").

The consent judgment in this case provides that the Ackels will "indemnify Jerilyn Lea Ackel from any liabilities or claims from any of the Estate's LLC and/or creditors . . . ." Adam Ackel testified that the Estate's LLC includes GJA. Thus, under the plain language of the consent judgment, the Ackels agreed to indemnify Jerilyn against liabilities or claims from the Estate's LLC—GJA—or the Estate's creditors. To recover for breach of this agreement, Jerilyn had to prove the liabilities had become fixed and certain. *Ingersoll-Rand Co.*, 997 S.W.2d at 208.

The Ackels argue they had no obligation to indemnify Jerilyn because there were no creditors that filed any claims against the Estate in the probate action and because the indemnity obligation was not triggered in the absence of a judgment taken against Jerilyn. We disagree. The language of the indemnity agreement does not require Jerilyn to establish that a claim was filed in the probate action against the Estate. We will not read language into the agreement that the parties did not include. *See Primo*, 512 S.W.3d at 893 ("We also refuse to insert language or provisions the parties did not use or to otherwise rewrite private agreements."). In addition, the

21

consent judgment contains broad indemnity language that includes liabilities from GJA, which (as we explain below) incurred the two liabilities at issue: the real estate commission and the amount due WM Architectural Design Foam.

Nor was Jerilyn required to show a judgment taken against her to trigger indemnity. A liability may be considered sufficiently fixed and certain to trigger indemnity where there has been an acknowledgement or admission that the sum is due and payable. *See*, *e.g., Humana Hosp. Corp. v. Am. Med. Sys., Inc.*, 785 S.W.2d 144, 145 (Tex. 1990) (concluding indemnity obligation was premature because "there has been no judicial determination—or admission—that American Medical Systems was, or could have been, legally liable to [plaintiff] in any way"); *Holland v. Fidelity & Dep. Co. of Md.*, 623 S.W.2d 469, 471 (Tex. App.—Corpus Christi 1981, no writ) (noting letters offered as evidence of obligation did not contain any acknowledgement of amount due and owing).

In this case, the Ackels agreed that the real estate commission was due and owing by GJA as of June 2012—before the outparcel was conveyed to Jerilyn. Adam Ackel testified as follows:

Q:  . . . Excel Urgent Care opened for business in June or July of 2012, didn't it?

A.  I believe that's correct, yes, sir.

Q.  So this commission was due and payable to those -- in full to those realtors at that time, wasn't it?

A.  I would agree with that.

Q.  Okay. So the commission would be due and payable to the realtors four months before this outparcel was conveyed to Jerilyn, right?

A.  I -- I guess that'd be safe to assume, yes.

Q. And neither you nor George Joseph Assets paid the realtors their fee, did you?

A. We did not.

Jerilyn received demands and threats of litigation from the realtors if the commission was not paid. We conclude this evidence renders the amount owed for the realty commission sufficiently fixed and certain to trigger the indemnity obligation.

The evidence further established that on August 9, 2012, WM Architectural Design Foam obtained a judgment against GJA for over $11,000 and filed a lien against the outparcel. A writ of execution was issued to satisfy the judgment lien. Jerilyn testified that she paid $3,000 to settle the WM Architectural Design Foam judgment and prevent execution on the writ. Thus, both amounts awarded by the trial court were fixed and certain liabilities from GJA and fall within the language of the indemnity agreement. *See Ingersoll-Rand*, 997 S.W.2d at 208.

In support of their argument that Jerilyn had to show payment of a judgment before she could be indemnified, the Ackels cite several cases involving breach of an indemnity bond by a surety or other analogous agreement by one assuming the debt of another. *See Meier v. Serv. Corp. of Nat'l Ass'n of Credit Men*, 129 S.W.2d 690, 692 (Tex. Civ. App.—Dallas 1939, writ dism'd, judgmt cor.); *Latimer v. Tex. & N.O.R. Co.*, 56 S.W.2d 933, 935 (Tex. Civ. App.—Beaumont 1933, writ ref'd); *First State Bank of Paradise v. Wallace*, 161 S.W. 957, 959 (Tex. Civ. App.—Fort Worth 1913, writ ref'd). We find these cases inapposite because the agreements at issue involved indemnity obligations different from those in the consent judgment signed by the Ackels. We overrule the Ackels' legal sufficiency challenges to the damages awarded under the indemnity agreement.[9]

---

[9] The Ackels also attempt to invoke the fair-notice requirements for indemnity agreements purporting to indemnify parties in advance for the consequences of their own negligence. We

23

The Ackels also challenge the factual sufficiency of the evidence by arguing that Jerilyn did not establish she had paid the $3,000 to WM Architectural Design Foam or the $45,033 realty commission, noting there are no banking records showing the money was paid. The Ackels also point out that Jerilyn was the landlord at the time she received the invoice from the realty company. As a result, they contend, the obligation passed to her, and her delay in closing on the transaction caused the problems of which she complains.

Jerilyn testified that she paid the $3,000 judgment to obtain the release of lien from WM Architectural Design Foam. The lack of bank records does not render this testimony insufficient. Moreover, under the agreement with the realty company, the commissions became due and owing while GJA was the landlord. As explained above, the realty fee is a liability of GJA that was due and should have been paid under the agreement signed by GJA and the realty company prior to conveyance of the outparcel. After examining the entire record, considering both the evidence in favor of and contrary to the trial court's implied finding that the amounts were fixed and certain and that the Ackels failed to comply with the indemnity agreement, we conclude the trial court's finding is not against the great weight and preponderance of the evidence such as to be clearly wrong and unjust. *See Mar. Overseas Corp.*, 971 S.W.2d at 406-07. We overrule issue seven.

_____

reject this argument for two reasons. First, the Ackels do not point to any place in the record, nor have we found any, where the Ackels raised this issue in the trial court. To preserve an argument for review, the appellant must show that the appellant raised the issue and obtained a ruling from the trial court. Tex. R. App. P. 33.1; *see Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014) ("Preservation of error reflects important prudential considerations recognizing that the judicial process benefits greatly when trial courts have the opportunity to first consider and rule on error."). Second, even if preserved, the argument falls short because Jerilyn does not seek indemnity for the consequences of her own negligence, making the fair-notice requirements inapplicable to her claim. *See MAN GHH Logistics GMBH v. Emscor, Inc.*, 858 S.W.2d 41, 43 (Tex. App.—Houston [14th Dist.] 1993, no writ); *see also Transcon. Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 669 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

24

## V. The trial court did not err in awarding attorneys' fees.

In their sixth issue, the Ackels argue that the trial court erred in awarding attorneys' fees. The only argument offered in support of this issue is the statement that "[a]n award of attorney's fees must be authorized by statute, rule or contract," and "the determination as to whether fees can be segregated is a question of law."

We do not disagree with the Ackels' general statements of the law regarding attorneys' fees, though we do note one clarification regarding segregation of attorneys' fees. "[T]he need to segregate attorney's fees is a question of law, while the extent to which certain claims can or cannot be segregated is a mixed question of law and fact." *CA Partners v. Spears*, 274 S.W.3d 51, 81 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312-13 (Tex. 2006)). Nevertheless, the Ackels are incorrect that the trial court erred in awarding fees. First, the attorneys' fees award is authorized by statute. Jerilyn pleaded for the recovery of attorneys' fees for breach of the indemnity provision in the consent judgment under section 38.001 of the Texas Civil Practice and Remedies Code. "A suit on an agreed judgment sounds in contract . . . ." *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 71 (Tex. 1997). As the prevailing party on her claim for breach of the indemnity provision in the consent judgment, Jerilyn is entitled to recover her attorneys' fees under section 38.001(8). *Palavan v. McCulley*, 498 S.W.3d 134, 143 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding party entitled to attorneys' fees under section 38.001 where party obtained specific performance of obligations in agreed judgment).[10]

---

[10] We note that the recovery of fees is proper because a suit for breach of a provision in an agreed judgment is a suit for breach of contract, not merely because an agreed judgment is construed like a contract. *Cf. Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 74 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding proposition that deed restrictions are construed like contracts does not authorize recovery of attorneys' fees in suit for breach of

25

Second, to the extent the Ackels contend the trial court should have segregated the attorneys' fees recoverable by claim, any such error is waived. To complain of a failure to segregate fees, a party must first object to the failure to segregate at trial. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). The Ackels did not make any objections to the attorneys' fees evidence offered by Jerilyn at trial. (3RR171-76). We overrule the Ackels' sixth issue.

## CONCLUSION

We overrule the Ackels' first, second, third, fifth, sixth, and seventh issues. Because the evidence is factually insufficient to support the full amounts awarded as fraud damages regarding the Fairdale condo and the rent abatement for tenant improvements, we sustain in part and overrule in part the Ackels' fourth issue. In this situation, we may suggest a remittitur, and we do so here. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 124 (Tex. 2009). The evidence is sufficient to support an award for the loss of the Fairdale condo in the amount of $140,000. The trial court awarded $332,000. We thus suggest a remittitur of $192,000.00. With regard to the rent abatement for improvements, the evidence supports an award in the amount of $52,866.67 for loss of benefit of the bargain. The trial court awarded $100,000. We thus suggest a remittitur of $47,133.33.

The party prevailing in the trial court should be given the option of accepting the remittitur or having the case remanded for a new trial. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987). If appellees file a remittitur within twenty days from the date of this opinion, we will modify the trial court's judgment accordingly and affirm the judgment as modified. If the remittitur is not timely filed,

restriction).

26

we will reverse the trial court's judgment regarding liability and damages for fraud and remand that portion of the case for a new trial. Tex. R. App. P. 46.3; *see* Tex. R. App. P. 44.1(b) ("The court may not order a separate trial solely on unliquidated damages if liability is contested."). We affirm the trial court's judgment as it relates to liability and damages for breach of the indemnity agreement and the award of attorneys' fees.

/s/ J. Brett Busby
   Justice


Panel consists of Justices Jamison, Busby, and Donovan.