# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00086-CV

---

**David Campbell, Appellant**

**v.**

**Travis Central Appraisal District, Appellee**

---

**FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-21-005789, THE HONORABLE TIM SULAK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

David Campbell appeals from the trial court's final judgment denying his petition for review of a final order of the Travis Central Appraisal District (TCAD) setting the appraisal value of his homestead for tax year 2021. For the following reasons, we affirm.

## BACKGROUND

In mid-2019, the Campbell family began renovating their Central Austin home (the Property) to include the addition of a second story and doubling the home's square footage. In April 2020, TCAD notified Campbell in its Notice of Assessed Value that on January 1, 2020, the market value of the Property had increased from $401,700 to $550,156 and the appraised (a.k.a.

"assessed") value of the Property had increased from \$331,029 to \$435,385.[1]  Although Campbell had protested his property taxes on the Property every year from 2016 to 2019—and later protested them in 2021 and 2022—he did not protest them for tax year 2020 and paid the property taxes on the Property.

In April 2021, TCAD notified Campbell that on January 1, 2021, the market value of the home had increased to \$714,071 and the appraised value had increased to \$585,896. Believing that the appraised value set by TCAD violated the 10% cap on homesteads, *see* Tex. Tax Code § 23.23(a), Campbell timely filed a protest, *see id.* § 41.41(a)(1).  In his protest, Campbell asserted that the appraised value of the home in the 2021 notice improperly increased by more than the allowable 10% cap and that the provision in Section 23.23 allowing a greater increase due to "new improvements" did not apply because "no new improvements were made to the property during 2020." *See id.* § 23.23(2)(C).  After a hearing before TCAD's Appraisal Review Board, Campbell was still dissatisfied with the appraised value and timely filed a petition for review in Travis County district court. *See id.* § 42.21.  The district court's review in these types of cases is by trial de novo, and the "district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." *See id.* § 42.23(a).

The trial court conducted a bench trial August 1, 2022.  Campbell, an attorney, represented himself and called himself as a witness.  He did not call any other live witnesses but read into the transcript some excerpts from the depositions of Bill Gould, a TCAD appraiser, and Monica Chacon, TCAD's Director of Residential Appraisal.  The trial court admitted his evidence

---

[1] These increases in market and appraised values as reflected in TCAD's notice are taken from Campbell's First Amended Verified Petition.

including TCAD's responses to his discovery requests and the 2021 Notice of Appraised Value that he received from TCAD.

TCAD called Chacon to testify and read excerpts from Gould's deposition. The trial court admitted TCAD's evidence including its internal 2020 and 2021 "Appraisal Cards" pertaining to the Property, photographs of the Property it had received from Campbell, work and change orders produced by Campbell regarding construction on the Property, the demolition and building permits issued by the City for the Property (including building plans), and the Certificate of Occupancy issued by the City on January 16, 2020.

Gould's deposition testimony revealed that he visited the Property on November 4, 2019, and spoke with Campbell's builder to "gauge the construction stage." Typically when he speaks with a builder near the end of a year, if he does not receive a definitive "yes" that the project will be finished by year's end, he will ask the builder, "Where are we today?" Based on his conversation with the builder, Gould estimated that the project was 85% complete and would not be finished by the end of the year. He explained that such estimation of completion percentage is consistent with his typical procedure as a TCAD appraiser towards the end of a calendar year. He testified that so close to the end of the year it is typical to experience storms, weather issues, and days unworked due to the holidays, so he felt "comfortable" setting the Property at 85% completion based on his site visit. Near the end of a year, he customarily takes the "level of complet[ion]" identified by a builder and utilizes it for the January 1 valuation date immediately following. Had he visited the site in September or October, he would have "flagged it for a follow-up" before the end of the year.

Chacon's deposition testimony revealed that TCAD's internal Appraisal Card for 2020 indicated that TCAD had documented the completion of the Property improvements at 85%

3

on its January 1, 2020 valuation date.  *See* Tex. Tax Code § 23.01(a) (noting that appraisal date for property under Chapter 23 is January 1).  Then, on its Appraisal Card for 2021, TCAD included the remaining 15% of the Property improvements that had not been included in the January 1, 2020 valuation date.  In her live testimony, Chacon explained that there was no way for TCAD to modify the completion percentage for the 2020 appraisal card because there was "no current litigation" as to that tax year.  She explained that the valuation for the remaining 15% of the improvements that was not reflected in the 2020 values was "picked up" for the 2021 appraisal valuation and had a market value of $106,971.  She testified that market value for new improvements does not necessarily equate to the cost of those improvements but reflects the amount those improvements would bring "in the market."  TCAD looks at the cost of the subject improvements and at sales data and derives a "mass market adjustment" factor to determine the market value of new improvements.  The adjustment factors differ among areas of the City "because sales need to indicate what that mass market adjustment will be."  The applicable mass market adjustment TCAD used for the Property is 1.74, meaning that the total cost of the 2020 improvements—$61,000—was multiplied by 1.74, bringing the market value of the 2020 improvements to $106,971.

Chacon testified that when TCAD appraisers speak with a project manager or builder on site, they "tend to take their word" about whether the construction will be completed by the end of the year and about the estimated completion percentage by year end.  She testified that she had reviewed Gould's notes regarding his November 2019 conversation with the builder and had seen the builder's change orders, which were admitted into evidence, including one dated December 19, 2019, indicating an updated estimated completion date of January 31, 2020, because "additional trim work and painting time is required."  Another change order was dated

4

December 5, 2019, and added more than 40% additional lighting and electrical items than on the original budget of $17,500. Chacon explained that she had seen a photo of the interior of the Property dated January 8, 2020, depicting ongoing work as shown by the presence of drop cloths on the floor, and she had seen the City's certificate of occupancy issued on January 16, 2020. The court also admitted photographs depicting the Campbell family moving back into the Property on January 18, 2020. Chacon explained that if the remaining 15% of the improvements were not included in the appraised value for tax year 2021, that 15% "would escape taxation." Gould and Chacon admitted on cross-examination that they did not have direct, personal knowledge about whether the improvements were, in fact, completed by December 31, 2019.

Campbell did not rebut Chacon's testimony about the market or appraised values of the 2020 improvements and did not offer any evidence about the value of the remaining 15% of improvements completed in 2020. Instead, he denied that any improvements were made in 2020 and testified that all the construction work was completed "by the end of" 2019, without providing a specific completion date or other evidence identifying such date. He testified that the cost of improvements to the Property exceeded $200,000, but he could not remember the total because he funded the improvements through a "refinance" and "something else" and could not remember "all the details." He testified that although he spoke with his builder to confirm his memory of when the construction was completed, he did not obtain anything in writing from the builder to document the completion date, and he did not have a copy of a contract with his builder. He testified that he did not protest TCAD's 2020 valuation because he had expected the values to go up significantly due to the improvements and barely looked at the 2020 Notice of Appraised Value.

At the conclusion of trial, the court identified the "central disputed fact" as whether "the job was complete[d] in [2019] or not." Having found that it was not, the court concluded

5

that Campbell had not met his burden of proof and denied his requested relief. The court later signed a final judgment denying Campbell all relief sought in his petition for judicial review. Campbell requested findings of fact and conclusions of law, which the trial court issued. The two findings read,

1.  There were new improvements made to the Subject Property by Plaintiff after the January 1, 2020 appraisal by Defendant, Travis Central Appraisal District.

2.  The value of the new improvements made during the 2020 calendar year was $106,971 and this value was added to the value of the Subject Property on the January 1, 2021 appraisal roll.

The trial court's sole conclusion of law reads, "Because Plaintiff did not prove that there were no new improvements added after January 1, 2020, and because Plaintiff failed to present any evidence of the value of said new improvements, the value of the Subject Property as reflected on the 2021 certified appraisal roll shall remain unchanged at $585,894."

## DISCUSSION

In one issue, Campbell contends that the trial court's fact findings are legally and factually insufficient to support the judgment. Campbell, as the plaintiff filing a petition for review of TCAD's appraisal, bore the burden of proof in the trial de novo. *See* Tex. Tax Code § 42.23(a); *Cypress Creek Fayridge, L.P. v. Harris Cnty. Appraisal Dist.*, No. 01-16-00003-CV, 2016 WL 7164032, at *4 & n.1 (Tex. App.—Houston [1st Dist.] Dec. 8, 2016, no pet.) (mem. op.) (noting that property owners bear burden of proof in lawsuits against appraisal districts); *Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.*, 981 S.W.2d 483, 485 (Tex. App.—Austin 1998, no pet.) (reciting test applicable when party with burden of proof challenges factual sufficiency in suit in which taxpayer appealed from trial court's finding). Thus, having borne the burden of proof on

the disputed issues, to prevail on appeal Campbell must either demonstrate that the evidence establishes as a matter of law all vital facts in support of the challenged issues (legal-sufficiency standard) or that the adverse findings are against the great weight and preponderance of the evidence (factual-sufficiency standard). *See Realtex Hous. Mgmt., LLC v. Villa Main Hous. Assocs., Ltd.*, No. 03-22-00104-CV, 2023 WL 8655279, at *5 (Tex. App.—Austin Dec. 15, 2023, pet. denied) (mem. op.).

Under the legal-sufficiency standard, we consider the evidence in the light most favorable to the finding under attack, crediting favorable evidence if a reasonable factfinder could have, disregarding contrary evidence unless a reasonable factfinder could not have, and indulging every reasonable inference that would support the finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). Under the factual-sufficiency standard, we examine the entire record, considering both the evidence in favor of and contrary to the challenged findings. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). Under either standard, the factfinder is the sole judge of the witnesses' credibility and the relative weight to be given their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We may not pass upon the credibility of the witnesses or substitute our judgment for that of the factfinder. *See George Joseph Assets, LLC v. Chenevert*, 557 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The factfinder may believe one witness instead of another, accept or reject any given witness's testimony in whole or part, and resolve conflicts in the proof. *See James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce*, 403 S.W.3d 360, 367 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

As to the first fact finding—that Campbell made new improvements to the Property after the January 1, 2020 appraisal—we conclude that it is supported by both legally and factually

7

sufficient evidence. Although Campbell denied that any new improvements occurred after December 31, 2019—testifying that all of the improvements were completed by the end of 2019—TCAD presented evidence to the contrary: Gould's testimony about his conversation with the builder and resulting estimation of construction completion by the year's end, which was consistent with his customary practice; Chacon's testimony about what information she considered when appraising the Property and TCAD's usual procedures for deriving completion percentages; a change order in early December 2019 adding significant electrical and lighting work to the original budget and another change order later that month indicating that work would continue through January 2020; a photograph of the Property taken in January 2020 depicting a work site that is consistent with the change order requiring additional painting and trim work; the certificate of occupancy that was not issued until mid-January 2020; and TCAD's determination that only 85% of the total improvements had been completed in 2019 and thus only 85% was included in the market and appraised values on January 1, 2020.[2]

Despite it being his burden to prove that no new improvements occurred after December 31, 2019, the only evidence Campbell presented of the project's completion date was his own interested and non-specific testimony that it was finished by the end of the year. He did not present any objective evidence of a specific date, such as a payment draw schedule, a construction schedule, proof of the final draw payment on the construction loan, a punch list or its

_____

[2] TCAD's 85% determination became final upon Campbell's failure to protest his 2020 taxes. *See Atascosa Cnty. Appraisal Dist. v. Tymrak*, 858 S.W.2d 335, 337 (Tex. 1993) (noting that taxpayer "loses its right to litigate the appraised value" of particular tax year unless he exhausts administrative remedies for that year); *Harris Cnty. Appraisal Dist. v. ETC Mktg., Ltd.*, 399 S.W.3d 364, 369 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (recognizing that property owner must raise particular issues before Appraisal Review Board to obtain judicial review of those issues).

completion date, a copy of the contract he had with his builder, or photographs of the Property on January 1, 2020 (despite having taken multiple photographs throughout the project, including the January 8, 2020 one with the drop cloths). Furthermore, Campbell testified that the improvements' cost exceeded $200,000, yet TCAD increased the Property's market value from 2019 to 2020 by only about $150,000 and its appraised value by only about $104,000. Chacon testified that the market value of new improvements is considerably higher than their construction cost, to the tune of 1.74 times higher. That means that the total market-value increase resulting from the improvements alone was at least $348,000, yet TCAD raised the 2020 market value by less than half that amount. The trial court could have reasonably inferred from Campbell's failure to protest the 2020 valuation that TCAD's determination of market value for that year was lower than he had expected.

The trial court was the sole judge of the witnesses' credibility and the weight to be given to the evidence, and we must conclude that its first finding was supported by legally and factually sufficient evidence.

As to the trial court's second fact finding, we conclude that it is supported by legally and factually sufficient evidence. The only evidence that Campbell presented to prove the value of the 2020 improvements was his testimony that the value is zero because no improvements were made in 2020. As already discussed, TCAD presented legally and factually sufficient contrary evidence demonstrating that improvements were made in 2020, and the trial court found in TCAD's favor on that issue. Having found that 2020 improvements occurred, the trial court was next tasked with determining whether Campbell met his next burden to prove that the value of those improvements was less than that determined by TCAD. Having heard Campbell's testimony that the value was zero and Chacon's testimony identifying the construction cost and market value

9

of the 2020 improvements, the trial court reasonably found, again, in TCAD's favor with respect to the value of the 2020 new improvements.

We hold that legally and factually sufficient evidence supports the trial court's two fact findings, and we conclude that its sole legal conclusion necessarily follows from those findings. We accordingly overrule Campbell's issue.

## CONCLUSION

We affirm the trial court's final judgment.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed: August 29, 2024