**Affirm and Opinion Filed August 31, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00340-CV

## IN THE INTEREST OF A.E.J., L.S.J., AND D.M.J., CHILDREN

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-17-19493**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Molberg, and Justice Nowell
Opinion by Justice Molberg

Father challenges the legal and factual sufficiency of the evidence supporting

a divorce decree which terminated his parental rights to three children, and also

contends the trial court abused its discretion in failing to appoint an amicus attorney

or attorney ad litem in connection with the termination suit. We affirm the trial

court's judgment.

## BACKGROUND

Father and mother have three children, A.E.J., L.S.J., and D.M.J. (collectively

"father's children"), who at the time of trial were approximately ten, eight, and five

years old. Mother also has an older daughter, Z.W., who was five or six years old when father and mother married and began living together, and seventeen at the time of trial.[1]

When Z.W. was fourteen, mother noticed changes in father's behavior, including staying up late at night, during which time father claimed he was searching for a job on a computer. Believing father was unfaithful, mother secretly installed an application on his cell phone that monitored how and where his phone was used. Using software connected to the application, mother viewed photos on father's phone that he had taken of Z.W.'s genitalia while Z.W. was asleep. To obtain the photos of Z.W.'s genitals, father had to have undressed Z.W. while she slept. Mother was able to identify Z.W. as the subject of the photos because of a blanket and Z.W.'s clothing visible in the photos, and she knew father took the photos because she could see his hand in some of the photos, and the photos were on his phone. The app also disclosed sexually explicit internet searches made by father between August and September 2016 specifically related to child pornography, and sex between a father and a daughter and a step-father and a step-daughter. Mother saved the photos and the internet search history on a thumb drive.

---

[1] Because Z.W. is not father's child, her interests are not in issue.

At trial, mother introduced a copy of the spyware report she had printed, which included copies of the photos of Z.W and the printed browser history from father's phone.

When mother confronted father about her discoveries, father apologized, admitted to a lapse in judgment, and although father also claimed he had never touched Z.W., agreed he needed help. Mother demanded he leave the home and she filed for divorce. Initially, the parties agreed father could remain in the home during the day, but would leave at night. One night shortly after the parties reached this agreement, in late September 2016, father refused to leave the house and mother called the police. Although father left the house before the police arrived, mother told the police about the photos father had taken and delivered a thumb drive with thirty-five sexually explicit photos, as well as "selfies" also from father's phone, to the police the next day.

The Glen Heights Police Department referred indecency and possession of child pornography charges to the Dallas County District Attorney. After the district attorney opened a criminal case, father was arrested.[2] Mother testified that during the criminal investigation, Z.W. was interviewed by the Children's Advocacy Center and shown the photos taken of her. Learning about the photos "devastated" Z.W.,

---

[2] CPS also opened an investigation, but our record does not disclose the disposition of that matter.

and she threw up when leaving the interview. The criminal charges against father were later dismissed without prejudice.[3]

Once, while father and mother were separated, father called his father-in-law to ask where mother and the children were. At trial, father-in-law said at the time of the call he did not know why the parties had separated and asked father what had happened. Father-in-law testified father admitted that he had taken inappropriate photographs of Z.W.

Mother also testified about and introduced documentary evidence demonstrating her completion and transmission of the forms necessary for father to have supervised visits with the children, but she asserted father had failed to complete the same forms. Father admitted he had not had any visitation with the children, but he testified he had not been contacted with instructions to complete the required paperwork.

Mother also established that despite temporary orders requiring father to pay $368 in monthly child support and $150 per month for medical insurance commencing April 2019, father had not paid any child support. Mother testified she was employed full-time, and she introduced evidence showing medical insurance coverage for all of the children through her employment. Mother described her

---

[3] The police report, introduced into evidence by mother, reflects the dates, manner, and reason for several instances the thumb drive was accessed while in police's custody. A report by a computer forensic examiner also included in our record suggests the thumb drive should have been copied rather than accessed directly.

flexible work hours, which generally required her to leave home at approximately 7 a.m. and allowed her to return home by 3 p.m., which in turn allowed her to transport her children to and from school.

Father claimed mother's contentions about his conduct, admissions, and any agreement that he would sleep outside of the house were fabricated. Father asserted mother was having an affair and had contracted a sexually transmitted disease, which prompted him to sleep outside the house. After the criminal charges against him were dismissed, father reported mother to the FBI, alleging her possession of the photographs of Z.W. was illegal possession of child pornography, which father asserted was evidence manufactured by mother. Father also filed a complaint with the State Bar of Texas against mother's attorney regarding "misconduct" in using manufactured evidence. Father further testified that although he had been unemployed at the time the photographs of Z.W. were taken, at the time of trial, he was employed and generally worked weekdays, 8 a.m. though 6 p.m., with additional occasional overtime on evenings and weekends.

The trial court ordered a child custody evaluation, and appointed E. Justin Ezeoha to prepare the report.[4] According to her interview with the custody evaluator

---

[4] Mr. Ezeoha was not called as a witness, but at trial the court took judicial notice of his report. Although facts included in documents which are judicially noticed are generally not evidence, custody evaluations— which are the equivalent of social studies— and the facts upon which they rely, are evidence the trial court and we may consider. *Green v. Remling*, 608 S.W.2d 905, 909 (Tex. 1980) (trial court may consider conclusory findings and conclusions in social study); *In Interest of B.H.W.*, No. 05-15-00841-CV, 2017 WL 2492612, at *8 (Tex. App.—Dallas June 9, 2017, pet. denied) (mem. op.).

appointed by the trial court, Z.W. recognized father's hand in the photos. She also recalled one evening in August 2016, when father had given her pills he said were to relax her muscles after an athletic tryout at school, and Z.W. recalled that she fell asleep after taking the pills.

The custody evaluator concluded that although it was possible mother had fabricated the photographs, mother's claims were supported by other information. For instance, as the custody evaluator observed, in early September after mother claimed she discovered the photos, she printed information regarding meeting times and locations for Sex Addicts Anonymous meetings,[5] which was unnecessary unless she was truthful about the photographs. Likewise, in the same early September period, mother consulted a spiritual advisor about how to deal with her discovery of the photographs and father's actions. Mr. Ezeoha reported mother had followed the spiritual advisor's advice to call the police, and provided copies of her texts with the spiritual advisor to him.

In his report, Mr. Ezeoha observed what would also have been obvious to the trial court as the factfinder: the photos had to have been taken by either mother or father, as no evidence suggested any other adult had access to Z.W. while she was home sleeping. Likewise, Mr. Ezeoha also recognized Z.W. had unquestionably been violated, and other female children in the home required protection, but

---

[5] The printed pages were attached to Mr. Ezeoha's report.

nonetheless he recommended the court appoint mother managing conservator, appoint father possessory conservator, and if the court credited the allegations against father regarding photographing Z.W., grant father only supervised visits.

Father sought "custody" of his children.[6] In the final decree of divorce entered following a bench trial, the court found clear and convincing evidence that father had engaged in conduct that endangered the emotional and physical well-being of the children and determined that terminating father's parental rights to all of father's children was in the children's best interest. At father's request, the trial court also filed Findings of Fact and Conclusions of Law (FFCL) in which it determined appointment of an ad litem attorney for the children was unnecessary and made numerous subsidiary factual findings relating to father's conduct, but no specific findings relating to the ultimate issues, namely the predicate ground for termination of the father-children relationship and the determination of the best interest of the children. Father filed a motion for new trial and requested additional or amended findings of fact and conclusions of law. Both motions were denied. In two issues, father challenges the judgment.

---

[6] Father was pro se until after the final decree was entered. Neither his answer nor his arguments or testimony during trial specified whether he was requesting designation as managing conservator or possessory conservator.

**DISCUSSION**

## A.    The burden of proof and standard of review

When the movant provides clear and convincing evidence that a parent has committed one predicate act prohibited by section 161.001(1) of the family code and termination is in the best interest of the child, parental rights are appropriately terminated. *In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009); *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); TEX. FAM. CODE § 161.001(1), (2). Clear and convincing evidence means that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re K.L.B.*, No. 05-01-01924-CV, 2002 WL 31388776, at *1 (Tex. App.—Dallas Oct. 24, 2002, no pet.) (mem. op.).

The heightened burden of proof informs the standard we utilize in reviewing the trial court's decision. In reviewing termination findings, we determine whether "the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the . . . [movant's] allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the evidence is factually sufficient to support the termination of a parent-child relationship, we perform "an exacting review of the entire record." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Although we appreciate the "constitutional magnitude" afforded parental rights, we also

recognize the imperative that the "emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d at 26.

## B.    Legal and factual sufficiency

In his first issue, father contends the evidence is legally and factually insufficient to support termination of his parental rights. When evaluating evidence for legal sufficiency under a clear and convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *City of Keller v. Wilson,* 168 S.W.3d 802, 817 (Tex.2005); *In re J.F.C.,* 96 S.W.3d at 266.

In conducting a factual sufficiency review, we consider the evidence that the factfinder could reasonably have found clear and convincing, and based on the entire record, we determine whether the factfinder could reasonably have formed a firm belief or conviction that the allegations in the application were proven. *In re J.F.C.,* 96 S.W.3d at 266; *In re J.O.A.*, 283 S.W.3d at 345. We also recognize that only the trier of fact may judge the witnesses' credibility, and resolves any conflicts between testimony of different witnesses. *City of Keller,* 168 S.W.3d at 819; *In re R.W.*, 129

S.W.3d 732, 742–43 (Tex. App.—Fort Worth 2004, pet. denied) (jury was free to disbelieve father's assertion that he did not sexually abuse child at issue).

### 1. Findings of fact

As an initial matter, we must address father's contention that despite his timely and proper request, the trial court failed to file separate, post-judgment findings of fact to support endangerment and best interest determinations and, as a result, we may not imply or presume such findings on this record. *See* Tex. R. Civ. P. 299 ("judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment").

Here, the trial court's finding of the predicate act of endangerment and its best-interest-of-the-child finding are embodied in the final decree, not in separately filed post-judgment findings of fact, as father requested.

Thus, father implicitly argues that because the trial court's findings are contained in the final decree, they must be disregarded as in violation of rule 299a, which provides that findings of fact following a bench trial "shall not be recited in a judgment." Tex. R. Civ. P. 299a. Father also argues that because the only post-judgment findings made by the trial court following his request related to the

appointment of an attorney ad litem and concerned a variety of subsidiary, non-controlling facts related to father's conduct, we may not imply or presume endangerment and best interest findings in support of the final decree terminating his parental rights.[7]

Texas Rule of Civil Procedure 299a provides that a trial court's findings of fact following a bench trial "shall not be recited in a judgment," but that if they are, separately filed "findings of fact made pursuant to Rules 297 and 298 will control" to the extent of any conflict between the two. Tex. R. Civ. P. 299a. We acknowledge we have not been consistent in our interpretation of rule 299a. For example, in *R.S. v. B.J.J.*, 883 S.W.2d 711, 715 n.5 (Tex. App.–Dallas 1994, no writ), we concluded that findings in the body of a judgment "are inappropriate and may not be considered on appeal."[8] Other courts are in accord with this view. *See, e.g., Sutherland v.*

---

[7] The only post-decree findings and conclusions made by the trial court related to the non-appointment of an attorney ad litem, followed by a collection of subsidiary, non-controlling facts relating to father's conduct, mislabeled "conclusions of law." As to the latter, we have recently noted, "A trial court should make findings as to only disputed facts significant to the case's ultimate issues. Findings that a jury would be asked to make in a case may be an appropriate guide." *Guillory v. Dietrich*, 598 S.W.3d 284, 290 (Tex. App.—Dallas 2020, pet. denied); *see also Watts v. Lawson*, No. 07-03-0485-CV, 2005 WL 1241122, at *3 (Tex. App.—Amarillo May 25, 2005, no pet.); *Stuckey Diamonds, Inc. v. Harris Cty. Appraisal Dist.*, 93 S.W.3d 212, 213 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Although there is generally no penalty for superfluous findings, they often "make judgments unnecessarily difficult for litigants to appeal and appellate courts to review." *Guillory*, 598 S.W.3d at 290.

[8] *See also In re J.S.*, No. 05-16-00138-CV, 2017 WL 894541, at *7 n.4 (Tex. App.—Dallas Mar. 6, 2017, no pet.) (mem. op.); *Griffin v. Griffin*, No. 05-06-00935-CV, 2007 WL 1413350, at *1 n.1 (Tex. App.—Dallas May 15, 2007, no pet.) (mem. op.); *Youngstown Area Jewish Fed'n v. Dunleavy*, 223 S.W.3d 604, 610 (Tex. App.—Dallas 2007, no pet.); *Willms v. Americas Tire Co., Inc.*, 190 S.W.3d 796, 802 (Tex. App.—Dallas 2006, pet. denied); *LaFrensen v. LaFrensen*, 106 S.W.3d 876, 878 (Tex. App.—Dallas 2003, no pet.); *Casino Magic Corp. v. King*, 43 S.W.3d 14, 19 n.6 (Tex. App.—Dallas 2001, pet. denied); *FDIC v. Morris*, 782 S.W.2d 521, 523–24 (Tex. App.—Dallas 1989, no writ).

*Cobern,* 843 S.W.2d 127, 131 n.7 (Tex. App.—Texarkana 1992, writ denied) (fact findings contained in judgment may not be considered on appeal); *Boland v. Natural Gas Pipeline Co.*, 816 S.W.2d 843, 844 (Tex. App.—Fort Worth 1991, no writ) (same).

More recently, however, we have said that "[b]ecause the record does not contain any additional findings of fact or conclusions of law, the findings in the judgment have probative value and will be treated as valid findings." *Lee v. Paik*, No. 05-17-01406-CV, 2019 WL 1033869, at *2 (Tex. App.—Dallas Mar. 5, 2019, no pet.) (mem. op.) (citing *George Joseph Assets, LLC v. Chenevert*, 557 S.W.3d 755, 764 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)). *Accord, In re J.P.M.*, No. 05-18-00548-CV, 2019 WL 6768763, at *2 (Tex. App.—Dallas Dec. 12, 2019, no pet.) (mem. op.); *In re E.A.C.*, 162 S.W.3d 438, 443 (Tex. App.—Dallas 2005, no pet.). *Lee*, *In re J.P.M.*, and *In re E.A.C.* appear consistent with other appeals courts that have considered the issue. *See, e.g.*, *Chenevert*, 557 S.W.3d at 764; *In re Sigmar*, 270 S.W.3d 289, 295 n.2 (Tex. App.—Waco 2008, orig. proceeding); *Hill v. Hill*, 971 S.W.2d 153, 156–57 (Tex. App.—Amarillo 1998, no pet.). Still other authorities indicate that predicate-termination and best interest findings are not the type of fact findings to which rule 299a applies and that it is proper to include them in the final decree. *See, e.g.*, *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 252 (Tex. App.—Houston

[1st Dist.] 2006, no pet.) (citing *In re A.I.G.*, 135 S.W.3d 687, 693–94 (Tex. App.—San Antonio 2003, no pet.); *see also Colbert v. Dep't of Family & Protective Servs.*, 227 S.W.3d 799, 809 (Tex. App.—Houston [1st Dist.] 2006), *pet. denied sub nom. In re D.N.C.*, 252 S.W.2d 317 (Tex. 2008).

The obvious conflict in our own cases and among the courts of appeals generally, however, is no impediment here because whatever the proper view, the record before us shows that the trial court's action was not erroneous for two reasons.

First, in a formal, post-trial "Memorandum Ruling" filed prior to entry of the final decree, the trial judge divided the parties' property, ordered child and medical support, and terminated Father's parental rights to his three children as follows:

> The court finds that [Father] has engaged in conduct that endangers the emotional and physical wellbeing of the children and that termination of his parental rights is in the children's best interest.

This formal finding, filed with the clerk and encompassing both the predicate ground for termination under family code section 161.001(b)(1)(E), and a best-interest determination under family code section 161.001(b)(2), is fully consistent with the findings contained in the final decree that followed, which found those controlling facts were established "by clear and convincing evidence." By use of the term "[t]he court finds," the memorandum manifests an intent that it should be relied upon by the parties and the appellate court, *see, e.g.*, *Kendrick v. Garcia*, 171 S.W.3d 698, 702 (Tex. App.—Eastland 2005, pet. denied), and it provides an

–13–

extensive explanation for the trial court's ruling. *See In re Estate of Miller*, 446 S.W.3d 445, 450–452 (Tex. App.—Tyler 2014, no pet.) (distinguishing *Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872(Tex. 1990)); *see also Moore v. Jet Stream Invs., Ltd.*, 315 S.W.3d 195, 208 (Tex. App.—Texarkana 2010, pet. denied.) (findings of fact and conclusions of law need not be in any particular form so long as they are in writing and filed with the clerk) (citing *Villa Nova Resort, Inc. v. State*, 711 S.W.2d 120, 124 (Tex. App.—Corpus Christi 1986, no writ)). The trial court's memorandum ruling is sufficient to comply with rules of civil procedure 296, 297 and 299a.

Second, even if we are mistaken in this view, there has been no harm to father from the trial court's failure to make post-decree findings and conclusions on the endangerment and best interest issues. Tellingly, father points to no harm, but merely assumes that the trial court's failure to file findings of fact in response to his request automatically places him in a strategic procedural position so as to entitle him to the relief he seeks in this appeal. While harm to the complaining party is generally presumed when a trial court fails to file fact findings on the controlling issues of a case following a proper and timely request, that is only true so long as the absence of harm does not appear on the face of the record. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam) (citing *Cherne Indus. v. Magallanes*, 763 S.W.2d 768, 722 (Tex. 1988); *see also Ad Villarai, LLC v. Pak,* 519 S.W.3d 132,

–14–

135 (Tex. 2017); *Ramer Concrete, Inc. v. Cardona*, No. 05-17-01435-CV, 2018 WL 5724617, at *1 (Tex. App.—Dallas Nov. 1, 2018, pet. denied) (mem. op.). The primary purpose of findings of fact is to narrow the basis of the judgment and "thereby reduce the number of contentions the appellant must make on appeal." *Guillory*, 598 S.W.3d at 290. In this way, an appellant is not left to guess the basis of the trial court's final determination. Indeed, in assessing harm, we look to whether the trial court's failure to make findings and conclusions prevents the complaining party from properly presenting its issues on appeal. *Id.* Error in failing to make findings is harmful "if it prevents an appellant from properly presenting a case to the appellate court." *Tenery*, 932 S.W.2d at 30; *see also Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014). Put another way, our inquiry is whether, because of the absence of findings, the party "must guess at the reason the trial court ruled against it." *Ramer Concrete, Inc.*, 2018 WL 5724617, at *1.

On the record before us, there is no reason to guess about the basis of the trial court's final decree terminating father's parental rights to his three children. Father does not argue otherwise. Here we have a full reporter's record of the trial proceedings that reveals the evidence on the parental-rights termination issue was focused on child endangerment and best interest issues. Moreover, father's principal brief aims directly at the endangerment and best interest issues. In addition, the trial court was not presented with a complex proceeding relating to termination. The

–15–

dispute was straightforward, not involving multiple grounds, alternative claims, or different theories relating to relief sought or defenses thereto. Too, father had the benefit of the trial court's memorandum ruling and the final decree, both of which are consistent in their findings relating to child endangerment and the best interest of the children. And finally, in this case the remedy for a failure to make findings would be to abate the appeal and direct the trial judge to file findings on endangerment and best interest—presumably the very findings she has already made twice.[9]

Accordingly, we reject father's complaint that the trial court failed to make proper and timely findings of fact or that such were necessary in this case.

## 2. Endangerment

Father argues that based on the language in the decree, the trial court premised termination on a finding that his conduct endangered father's children's physical or emotional well-being. This is consistent with the trial court's memorandum ruling, and five post-decree factual findings (mislabeled as conclusions of law) in the FFCL also suggest the same basis for termination.[10] Father asserts that even if these factual findings were supported by clear and convincing evidence, they do not support

---

[9] *See, e.g.*, *Ad Villarai*, LLC, 519 S.W.3d at 136 ("When the trial court's failure is harmful, the preferred remedy is for the appellate court to direct the trial court to file the missing findings.") (citing *Magallanes*, 763 S.W.2d at 722–23).

[10] We may, of course, disregard the label used by the trial court and construe findings and conclusions in whichever category they appropriately belong. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 (Tex. 1979) (trial court's designation of factual finding or conclusion of law not controlling).

termination of his parental rights to any of his children, arguing, "engaging in conduct that endangered some other child, somewhere, at some time is not a ground for termination pursuant to § 161.001(b)(1)(E). . . ." Father's argument, however, divorces his conduct from the risk to his children, and ignores ample authority supporting the conclusion that termination was necessary and appropriate.

The evidence supports and the trial court specifically found that father (1) took sexually inappropriate photos of Z.W.; (2) initially admitted to mother that he took the photos and acknowledged that he needed help; (3) took no steps to ensure he would not do this again and instead subsequently denied that he took the pictures; (4) began advancing the theory that mother had framed him; and (5) took no steps to mitigate the damage his acts caused to his stepdaughter or his three biological children. We conclude these findings, additional findings filed after trial but prior to entry of the final decree, and the evidence presented, appropriately support termination of father's parental rights to father's children, who were at risk for the same conduct, on the predicate ground of endangerment.

We begin with the premise that, as required by the family code in termination of parental rights cases, sexual abuse of a child endangers that child's physical or emotional well-being. TEX. FAM. CODE § 161.001(b)(1)(E) (termination permissible where a parent "engages in conduct or knowingly places the child with persons who engage in conduct which endangers the physical or emotional well-being of the

child."); *In re M.J.P.*, No. 05-16-01293-CV, 2017 WL 655955, at *6 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.). One single act or omission, however, fails to justify termination. The statute requires instead "a voluntary, deliberate, and conscious course of conduct by the parent." *In re T.L.E.*, 579 S.W.3d 616, 624 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

The family code does not require that the endangering conduct be directed at the child subject to the termination suit. *In re J.O.A.*, 283 S.W.3d at 345 ("We have previously said that endangering conduct is not limited to actions directed towards the child."). Indeed, predatory or harmful conduct directed at one child will support termination of parental rights as to a different child, because all children at risk for the same conduct by the same predator are endangered. *In re T.L.E.*, 579 S.W.3d at 625 ("Evidence of sexual abuse of one child is sufficient to support a finding of endangerment with respect to other children.") (internal quotation and alteration omitted); *In re S.H.*, No. 02-17-00188-CV, 2017 WL 4542859, at *10 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op.) ("a parent's endangering conduct toward other children is relevant to a determination of whether the parent engaged in behavior that endangered the child that is the subject of the suit"); *In re S.G.*, No. 01-18-00728-CV, 2019 WL 1448870, at *1 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, pet. denied) (mem. op.) (termination premised on physical and emotional danger posed by parent convicted of aggravated assault of a different child); *In re*

*E.A.G.*, 373 S.W.3d 129, 143 (Tex. App.—San Antonio 2012, pet. denied) ("Sexual assault of a child in the home is conduct we may infer will endanger the physical and emotional well-being of other children in the home who may either discover the abuse or be abused themselves.").

Here, the trial court determined father took sexually inappropriate photos of Z.W., which also required that he undress her while she was sleeping. Thus, father's conduct was far from a passive lapse in judgment. Further, the evidence demonstrates that rather than one isolated incident, father photographed Z.W. on several different days, and searched on the internet for incestuous and pornographic materials of children, and children and their fathers, as well. Father's conduct occurred while mother was present but sleeping, as were presumably each of father's children who were equally at risk from father's conduct. Father was arrested on the criminal charges while attempting to visit Z.W. at her school, although mother testified he had no reason to be at the school. Father initially admitted to taking the pictures (despite minimizing what he had done by clarifying that he had not touched Z.W.), but subsequently lied about his conduct, blamed mother instead, and failed to seek any treatment, therapy, or counseling to address and correct his behavior.

In crediting the trial court's factual findings regarding father's conduct despite dismissal of the criminal charges against him, we do not, as father asserts, doom him to termination "the minute" he was accused of inappropriate conduct. Father was

–19–

not exonerated; the criminal charges were dismissed "without prejudice." Thus, as the factfinder, the trial court was free to reject father's protestations of innocence, which were premised solely on dismissal of the criminal charges and father's unsupported and implausible argument that mother manufactured pornographic evidence reflecting his hand in the photos.[11] Based on the evidence in the record, the trial court could reasonably have formed a firm belief or conviction that father engaged in a course of conduct that endangered not only Z.W., but also demonstrated an unremitted predatory course of conduct endangering each of his own children. *See, e.g., In re S.R.*, 452 S.W.3d 351, 365 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (parent's failure to comply with services to improve mental health and parenting relevant to endangerment); *In re E.A.G.*, 373 S.W.3d at 143.

### 3. Best interests of the children

Father's first issue also asserts the trial court abused its discretion because no evidence supports any finding that termination was in the best interests of his children.

"'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation [than a finding of harm or neglect, and] . . . is

---

[11] We also reject father's contention that termination premised on dismissed criminal charges denied father an opportunity to present a hypothetically successful defense. Father could have contested the allegations against him in numerous credible ways, for instance by producing and allowing examination of the phone on which mother contends the photos were taken, or by calling as a witness someone from the investigating police department to explain why the charges were dismissed.

accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013). Evidence demonstrating endangerment may also inform whether termination serves the best interest of the child. *In re C.H.*, 89 S.W.3d at 28; *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex.1976). A parent's best interest has no role in this analysis. *In re K.L.B.*, 2002 WL 31388776, at *2. Factors informing whether termination serves the child's best interest include: (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) these individuals' or the agency's plans for the child; (7) the home's or proposed placement's stability; (8) the parent's acts or omissions that indicate an improper parent-child relationship; and (9) any excuse for the parent's acts or omissions. *See Holley,* 544 S.W.2d at 371–72; *In re D.W.*, 445 S.W.3d 913, 925 (Tex. App.—Dallas 2014, pet. denied). These non-exclusive factors provide guidance, rather than a checklist. *In re C.H.,* 89 S.W.3d at 27. Some may be inapplicable, and the absence of evidence supporting some will not preclude the factfinder from forming a strong conviction that termination is in the child's best interest "if the evidence was undisputed that the parental relationship endangered the safety of the child." *Id.* Of course, a parent's past conduct provides a persuasive measure for future conduct regarding a child's best interest. *In re M.F.*, No. 01-17-

00835-CV, 2018 WL 1630180, at *6 (Tex. App.—Houston [1st Dist.] Apr. 5, 2018, pet. denied) (mem. op.).

Father's only discussion regarding the children's best interests relies on the custody evaluator's recommendation that father receive supervised visitation. Father's argument thus ignores significant evidence supporting the judgment and invites us to violate our obligation to review only the evidence supporting the judgment with respect to the legal sufficiency, and to review all of the evidence with respect to factual sufficiency. We accordingly consider each applicable factor in turn.

### i. The children's desires

Our record does not include specific evidence regarding any of the children's desires regarding their placement or father's continued role in their lives, although the custody evaluator observed that each of father's children appeared bonded to father, and that he appropriately engaged with each. Nonetheless, the children's apparent love for father would merit little weight, particularly given their young age and thus vulnerability, and his conduct endangering their well-being. *In re J.J.S.*, No. 14-17-00359-CV, 2017 WL 4518595, at *11 (Tex. App.—Houston [14th Dist.] Oct. 10, 2017, pet. denied) (mem. op.); *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (noting that young age of child weighed in favor of trial court's finding that termination was in child's best interest).

*In re D.W.*, 445 S.W.3d at 926 ("evidence that a child loves a parent and enjoys visits is only marginally relevant to a best interest finding.").

### ii. The children's emotional and physical needs and emotional and physical danger, now and in the future

Mother's argument couples the second and third factors, the present and future emotional needs of and danger to the children, asserting both underlie the basis for terminating father's rights. We agree. Father's sexually predatory behavior regarding Z.W. created the same danger to all the children who lived with him. His conduct in denying any wrongdoing and blaming mother for fabricating evidence further evidences the danger he presents to his children and their need for protection from future conduct. *See In re A.L.*, 545 S.W.3d 138, 149 (Tex. App.—El Paso 2017, no pet.) (factfinder may infer parent's inability to improve unacceptable conduct from failure to utilize available programs). Comparatively, mother's testimony and the custody evaluator's report and opinion demonstrated the children received from mother the love, care, nurturing and stable environment necessary for their emotional and physical well-being. And no evidence suggested mother presented any emotional or physical danger to the children. We conclude these factors support termination.

While compelling evidence supporting just these two factors suffices to demonstrate termination was in the best interests of the children, *see In re C.H.*, 89 S.W.3d at 27 ("undisputed evidence of only one factor may be sufficient to support

a finding that termination is in the best interest of the child"), ample additional evidence supports termination here.

### iii. The parties' respective parenting abilities

The fourth factor, the relative parenting abilities of the parties, likewise supports termination. Several considerations inform this factor, including parenting skills and judgment. *In re J.D.*, 436 S.W.3d 105, 119 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The custody evaluator's opinion references positive attributes of both parents' parenting abilities, for instance with respect to discipline, education, and consistency. We cannot view that opinion in a vacuum, however, by ignoring the evidence that father used Z.W. as the subject of child pornography. Although father asserted mother instead engaged in that conduct, a reasonable factfinder could have resolved this conflict against father, and concluded, as we do, that this factor favors mother.

### iv. Programs available to assist the parties to promote the children's best interests

With respect to the fifth factor, mother testified that she sought out and took Z.W. to therapy, as well as having searched for sex addiction treatment programs for father, which he chose to ignore. In comparison, father denied engaging in harmful behavior necessitating assistive programs. Accordingly, this factor supports termination. *See In re A.F.J.*, 576 S.W.3d 743, 754 (Tex. App.—El Paso 2019, pet. denied); *In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.).

### v. The parties' respective plans for the children and stability of proposed placement

We consider the sixth and seventh factors collectively, acknowledging the importance of a stable home environment and whether a party's parenting and supervision plans are realistic and well-defined. *In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The custody evaluator inspected the parties' homes,[12] which were both clean, well-furnished, and well-supplied with food and other essentials. At the time of trial, father's youngest child was in kindergarten and daycare, with the older two in school full time. Mother testified she had been steadily employed, personally cared for the children, and her work schedule allowed flexibility to pick them up when school concluded. Father testified he also planned to personally care for the children, but he did not identify any plan enabling him to provide that care in light of his work schedule. The trial court also heard testimony regarding father's failure to comply with temporary orders requiring father to pay child and medical support during the pendency of the divorce, and his recent periods of unemployment and homelessness.

Given the trial court's role in judging the witnesses' credibility and evaluating the parties' respective plans, as well as father's recent history of unemployment and

---

[12] Although father lives with his girlfriend in her home, for some period after mother filed for divorce but before the custody evaluator was appointed, father had lived in the homeless shelter at the VA hospital. The custody evaluator also noted that the girlfriend was aware of the abuse allegations against father but believed mother had fabricated those allegations.

homelessness, we conclude the trial judge may have reasonably determined father's plan was not realistic and his home situation was less stable than mother's, and resolved this factor in favor of mother. *See id.; see also In re M.F.*, No. 01-17-00835-CV, 2018 WL 1630180, at *6 (Tex. App.—Houston [1st Dist.] Apr. 5, 2018, pet. denied) (mem. op.) (court may consider "circumstantial evidence, subjective factors, and the totality of the evidence" as well as evaluating parent's future conduct by comparing it with past conduct).

### vi. Parent's acts or omissions relevant to existing parent-child relationship and any related excuses

We also consider the final two factors together. The same facts relevant to endangerment, as well as the evidence related to factors two and three above, inform this factor. *See In re J.D.*, 436 S.W.3d at 121 (discussing endangering child abuse by mother regarding this factor). We conclude father's actions in taking photographs of Z.W. for pornographic purposes, his internet searches for similar incestuous materials, his denial of those activities and efforts to blame mother instead, and his failure to seek out help for himself regarding that conduct support termination pursuant to these factors.

Utilizing the appropriate standards and considering the appropriate evidence for both father's legal sufficiency challenge and his factual sufficiency challenge, we conclude that a reasonable factfinder could have formed a firm belief or

conviction that each of the findings informing and supporting termination was true. We resolve father's first issue against him.

## C.    Failure to appoint an ad litem[13]

In his second issue, father complains that the trial court failed to appoint an ad litem attorney as required by family code section 107.021(a–1). *See* TEX. FAM. CODE § 107.021(a–1). He also argues that although the trial court found appointment of an ad litem was unnecessary, no evidence supports that finding. Mother responds that in failing to raise this argument until his motion for new trial, father waived it. If not waived, however, mother asserts no appointment was necessary.

Generally, we will not consider errors not timely raised in the trial court. TEX. R. APP. P. 33.1(a). Although father contends he preserved his objection to the trial court's failure to appoint an ad litem by raising it in his motion for new trial, we disagree. Any conflict between mother's interests and the children's which precluded mother from adequately representing the children's interests was present from the inception of the case. Thus, father's objection raised after trial was untimely and failed to preserve the error, if one existed. *Vaughan v. Walther,* 875 S.W.2d 690, 690-91 (Tex. 1994) (disqualification of opposing counsel waived because complaining party failed to object as soon as conflict of interest became apparent); *Crews v. Dkasi Corp.*, 469 S.W.3d 194, 201 (Tex. App.—Dallas 2015,

---

[13] Our references to an ad litem attorney include an amicus attorney.

pet. denied) ("'[T]imely' objection for purposes of rule 33.1 is one interposed at a point in the proceedings which gives the trial court the opportunity to cure any alleged error.") (internal quotation omitted).

Even if not preserved, father contends he may raise his objection for the first time on appeal, relying on *Turner v. Lutz*, 654 S.W.2d 57, 58 (Tex. App.—Austin 1983, no writ) ("[A] court's error in failing to appoint a guardian ad litem can be raised, as it was in this case, for the first time on appeal"). We conclude, however, that the due process analysis mandated by *In re B.L.D.*, 113 S.W.3d 340, 351 (Tex. 2003), compels the opposite conclusion. Based on our analysis below, we thus conclude that father's failure to raise a timely objection to the trial court's refusal to appoint an ad litem attorney waived the issue. *See also In re L.F.*, No. 02-19-00421-CV, 2020 WL 2201905, at *11–13 (Tex. App.—Fort Worth May 7, 2020, no pet. h.) (applying *B.L.D.* analysis to unpreserved error regarding trial court's failure to appoint counsel for indigent parent in adoption proceeding following termination, and finding no "fundamental unfairness"); *see also, e.g., Baize v. Baize*, 93 S.W.3d 197, 203 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("When there are no circumstances causing a trial court to believe an ad litem is necessary, a party who does not request appointment of an ad litem and does not object to the failure to appoint one waives any error regarding the trial court's failure to appoint an ad litem.").

In rejecting *Turner* and its progeny, we observe neither it nor the cases that follow it rest on the analysis provided by *B.L.D.*, or, indeed, even contemplate that analysis. Instead, in each case in which the failure to appoint an ad litem was considered on appeal despite failure to raise the error in the trial court, at most, the right to an ad litem was simply described as one of constitutional magnitude with no analysis regarding whether due process rights were unfairly restricted by enforcing our waiver rules. *See In re D.M.O.*, No. 04-17-00290-CV, 2018 WL 1402030, at *2 (Tex. App.—San Antonio Mar. 21, 2018, no pet.) (mem. op.) ("[W]e conclude a complaining party may raise a trial court's failure to appoint an attorney ad litem or amicus attorney when required by Section 107.021(a–1) for the first time on appeal."); *In re K.M.M.*, 326 S.W.3d 714, 715 (Tex. App.—Amarillo 2010, no pet.) ("Simply put, the failure to comply with § 107.021 is error that cannot be treated as harmless due to the serious nature of the proceedings involved."); *Turner,* 654 S.W.2d at 59–60 ("The issues involved in the termination of parental rights action are of such a serious nature that the trial court's error cannot be treated in any other way [i.e., excepted from waiver rules]"); *Arnold v. Caillier*, 628 S.W.2d 468, 469 (Tex. App.—Beaumont 1981, no writ) ("Cases involving termination of parental rights present issues of constitutional dimensions.").

In *B.L.D.*, the Texas Supreme Court considered whether a parent subject to a termination proceeding waived charge error by failing to timely object. 113 S.W.3d

at 340. The court first recognized the important prudential considerations underlying preservation of error rules, including fairness among litigants and conserving "judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds." *Id*. at 350. It also determined that despite the constitutional importance of parental rights, those rights did not implicate the fundamental error doctrine, which provided an exception to our preservation of error rules. *Id.* at 350–51. Because termination cases nonetheless implicate "fundamental liberties," the court acknowledged the due process—fundamental fairness—requirements inherent in the proceedings. It observed the presumption that "our rules governing preservation of error in civil cases comport with due process," *id.* (citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981), and *Whitworth v. Bynum,* 699 S.W.2d 194, 197 (Tex.1985) ("A court begins by presuming a statute's constitutionality, whether the basis of the constitutional attack is due process or equal protection")), and embraced its prior determinations that unpreserved complaints regarding constitutionally protected parental rights were subject to waiver. *Id.* (citing *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) (concluding constitutional right to assert paternity claim, not raised in trial court, was waived)); *see also In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005) ("We have held that the rules governing error preservation must be followed in cases involving

termination of parental rights, as in other cases in which a complaint is based on constitutional error.").

The court then evaluated whether due process nonetheless required review of an unpreserved complaint regarding charge error in that termination case, by identifying and balancing the three factors delineated in *Mathews v. Eldridge*, 424 U.S. 319, 335(1976)[14], and as required by *Lassiter*, 452 U.S. at 27, balancing the "net weight" of those factors against the presumption that our preservation law does not permit review of unpreserved error in civil cases. *In re B.L.D.*, 113 S.W.3d at 352. The court concluded that the three factors in play—the private interest, the risk of erroneous deprivation of that private interest through the procedures at issue, and the competing governmental interest—did not rebut the presumption that "our error preservation rules comport with due process." *Id.* at 354.

Although we examine waiver of a different error—failure to appoint an ad litem—we follow the same analysis. As in *B.L.D.*, father's "fundamental liberty interest in the care, custody and control of his children" favors reviewing unpreserved error. Similarly, we recognize the state's dual, but competing interests. The best interest of the child—the State's foremost interest in termination suits, *see*

---

[14] These factors are: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Eldridge*, 424 U.S. at 335.

TEX. FAM. CODE § 153.001(a)—also favors reviewing unpreserved error if necessary to ensure an "accurate and just decision." *In re B.L.D.*, 113 S.W.3d at 353. The best interest of the child, however, also requires a heightened concern for judicial economy manifested as a prompt and final resolution of termination cases.[15] And the State's interests here, as in every case, includes ensuring trial courts have an opportunity to correct their own errors. Those competing interests weigh against allowing review of unpreserved error, and equalize the State's and father's interests.

The final *Eldridge* factor, the risk of an erroneous deprivation of parental rights arising from application of our preservation of error rules, weighs against disregarding our error preservation rules. A comprehensive, belt-and-suspenders process guards against erroneous decisions in parental termination cases. Indeed, the appointment of an ad litem is but one of those protections. *See* TEX. FAM. CODE §§ 107.013, 107.021. The process includes an extensive statutory scheme intended to minimize the risk of erroneous deprivation. *See* TEX. FAM. CODE §§ 102.008, 161.101 (petition seeking termination of parental rights must provide full notice to all parties involved and prove statutory grounds for termination and that termination

---

[15] Termination cases mandate judicial economy. "To ensure that children's lives are not kept in limbo while judicial processes crawl forward, the Legislature requires that termination proceedings conclude at the trial level within a year and a half from the date of a child's removal from the parent." *In re B.L.D.,* 113 S.W.3d at 353 (citing TEX. FAM. CODE § 263.401 (providing that a trial court must dismiss a case within one year, but permitting one 180-day extension)). Additionally, appellate review of these cases must conclude within 180 days, TEX. R. JUD. ADMIN. 6.2(A), and the order rendered is subject to direct or collateral attack for only six months after it is signed. *Id.* at § 161.211.

is in the child's best interest); *id.* at § 107.013(a)(1) (trial court must appoint counsel for indigent parents opposing termination); *id.* at § 161.001(b) (involuntary termination permitted only if clear and convincing evidence satisfies statutory requirements). Additionally, the heightened burden of proof mandates a heightened standard of review for both legal and factual sufficiency challenges. *In re B.L.D.*, 113 S.W.3d at 353–54. These protections accordingly suggest a low risk of an erroneous deprivation of parental rights if our preservation rules are enforced with respect to the additional safeguard provided by appointment of an ad litem attorney. We conclude father's private interest is offset by the State's competing interests, and the risk of deprivation favors enforcing our preservation rules. Thus, the weight of these factors demonstrates that enforcing our preservation rules does not violate father's due process rights.

Moreover, in the event the fact-specific analysis also conducted in *Lassiter* and considered in *B.L.D.* is necessary,[16] we conclude the facts here do not alter the net weight of the factors described above. We thus also reject as inapplicable the holding of *In re M.S.,* 115 S.W.3d 534, 548 (Tex. 2003) (due process precludes waiver of factual insufficiency argument not raised in parental termination case where appointed counsel was ineffective). As discussed below, mother's interests were aligned with father's children's interests and she accordingly represented their

---

[16] *See Lassiter,* 452 U.S. at 31; *B.L.D.*, 113 S.W.3d at 354.

interests so as to negate the need for an ad litem. We conclude father waived any complaint regarding the trial court's failure to appoint an ad litem by failing to raise it prior to trial, and that by following our error preservation rules, we do not deprive father of any due process right.

But even if we did not find waiver, we would affirm the trial court's factual finding because the exceptions included in the statute abrogate the requirement of an ad litem here. With respect to appointing an ad litem when the government is not a party, the family code provides:

> (a–1) In a suit requesting termination of the parent-child relationship that is not filed by a governmental entity, the court shall, unless the court finds that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests, appoint one of the following:
>
> (1) an amicus attorney; or
>
> (2) an attorney ad litem.

TEX. FAM. CODE §107.21(a–1). Thus, the statute contemplates one party in a private suit may adequately represent the child's interests, so long as that party's interests are not in conflict with those of the child.

In the FFCL, the trial court found an ad litem was unnecessary:

> Prior [sic] at the pretrial hearing,[17] the Court considered whether the appointment of an Ad Litem for the three children was necessary and

---

[17] Our record does not include any evidence that mother requested that the trial court determine whether an ad litem was unnecessary, and as noted above, father made no request for appointment of an ad litem until after trial. We observe, however, that the statute does not preclude a court making the determination *sua sponte.*

concluded per 107.021 that it was not necessary because their interests would be adequately represented by a party whose interests were not in conflict with the children's. In making this determination, the Court considered the limited resources of the parties and the complexity of the litigation and that the primary issue in this case would be the credibility of the evidence presented at trial. Consequently, no appointment was made.

Nonetheless, father relies on cases which essentially reject the facial import of the statute by holding "a trial court can seldom find that one party adequately represents the interests of the children involved or that their interests are not adverse." *In re K.M.M.*, 326 S.W.3d at 715; *see also Chapman v. Chapman*, 852 S.W.2d 101, 102 (Tex. App.—Waco 1993, no writ) (concurrent ability to adequately represent child's needs while also seeking to terminate other party's parental rights would be "rare situation"). Contrary to the implicit premise of these decisions, here we are not presented with *any* reason mother sought to terminate father's rights except for the best interests of all her children. We see no conflict between Z.W.'s interests and those of her siblings, and thus no conflict between mother's interests in protecting Z.W. and protecting father's children. *See In re B.W.*, No. 02-19-00009-CV, 2019 WL 2041808, at *7 (Tex. App.—Fort Worth May 9, 2019, no pet.) (mem. op.) (mother's testimony that she sought to protect child from father with a history of family violence demonstrated mother's interests aligned with child's); *In re C.A.P.*, No. 04-12-00553-CV, 2013 WL 749825, at *2 (Tex. App.—San Antonio Feb. 27, 2013, pet. denied) (mem. op.) (no error in refusal to appoint ad litem in

private termination case where mother sought to terminate father's rights following his conviction for sexual assault of a different child); *In re T.L.W.*, No. 12-10-00401-CV, 2012 WL 1142475, at *3 (Tex. App.—Tyler Mar. 30, 2012, no pet.) (mem. op.) (no error in refusing to appoint ad litem where record reflected mother's primary interest in seeking father's termination was in best interest of her child); *In re R.J.C.*, No. 04–09–00106–CV, 2010 WL 816188, at *2 (Tex. App.—San Antonio Mar. 10, 2010, no pet.) (mem. op.) (no error in refusal to appoint ad litem and concurrent findings that mother adequately represented child's interest in termination proceeding premised on father's sexual assaults of mother's other children).

Finally, although the trial court made its determination at an unspecified pretrial hearing for which no record was made, father waived any error arising from the court reporter's failure to transcribe the hearing. *See Kohler v. M & M Truck Conversions*, No. 02-08-00332-CV, 2009 WL 2579639, at *1 (Tex. App.—Fort Worth Aug. 21, 2009, no pet.) (mem. op.) (absent express agreement to waive record, reporter's failure to transcribe constitutes error subject to complaining party's burden to raise timely objection regarding such error). We accordingly presume any evidence considered at the hearing supports the finding. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005).

We resolve father's second issue against him. We affirm the trial court's judgment.

/Ken Molberg/
KEN MOLBERG
JUSTICE

200340f.p05

Burns, C.J., dissenting



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.E.J., L.S.J., AND D.M.J., CHILDREN

No. 05-20-00340-CV

On Appeal from the 301st Judicial District Court, Dallas County, Texas Trial Court Cause No. DF-17-19493. Opinion delivered by Justice Molberg. Chief Justice Burns and Justice Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee recover her costs of this appeal from appellant.

Judgment entered this 31st day of August, 2020.