**Opinion issued February 28, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-21-00484-CV**

————————————

**MARY LOU LARA, Appellant**

**V.**

**JIMMY BUI, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-14386**

---

**MEMORANDUM OPINION**

This is a personal injury case stemming from an automobile accident. Appellant Mary Lou Lara challenges the trial court's judgment rendered on the jury's verdict in favor of appellee Jimmy Bui on his negligence claim against Lara. In one issue, Lara contends the evidence is legally and factually insufficient to

support the jury's awards of $20,973.00 for past medical care expenses and $150,000.00 for future medical care expenses because Bui did not provide any expert testimony that the automobile accident caused his complained-of injuries. We affirm in part, reverse and render in part, and reverse and remand in part.

## Background

Lara and Bui were involved in a motor vehicle accident in Houston. In March 2018, Bui sued Lara alleging that Lara's negligence caused his medical injuries. The case proceeded to a jury trial. Three witnesses testified: Bui, Lara, and Dr. Alj Florence Sparrow. The parties presented the following evidence at trial.

On the morning of September 2, 2016, at approximately 7:30 a.m., Bui was driving northbound on Almeda Genoa Road and Lara was driving southbound on the same road. Lara entered a cut-through to make a U-turn on the northbound side of Almeda Genoa. As she proceeded into the right lane of the northbound side, Lara's vehicle collided with Bui's vehicle. Bui's airbag deployed, and both vehicles were towed from the scene. The police arrived at the scene and completed a crash report. Neither Bui nor Lara sought emergency care or other medical treatment immediately following the accident.

At trial, Bui testified that he did not have any broken bones, internal bleeding, or life-threatening injuries as a result of the accident.[1] Bui testified that he did not feel immediate pain but that "over time it did build up to the point that I was experiencing pain on my back and my hand." Four days after the accident, Bui was seen by Nancy Huynh, a chiropractor, for pain in his back, neck, and wrist. Huynh sent Bui for X-rays and a MRI of his lumbar spine which revealed two herniated discs. Bui received twenty sessions of chiropractic treatment over the next two months. At his last visit on November 1, 2016, Huynh released Bui, recommended that he continue therapeutic exercises and stretching at home, and advised him to see a specialist "due to un-resolving pain and to return if medically necessary." In her chart notes, Huynh wrote "[d]ue to clinical exams and diagnostic studies, it is my personal opinioned [sic] that Mr. Bui['s] injuries was the direct cause of the accident sustained on 9/2/2016." Huynh noted Bui's final diagnosis as cervicalgia, thoracic pain, lumbalgia, fatigue, muscle spasms, hand or wrist pain, and lumbar disc disorder.

After experiencing increasing pain in his back, Bui returned to see Huynh seven months later, on June 6, 2017. In her notes, Huynh stated: "Patient reported he returned to therapy due to discomfort and achy pain along both sides of the mid

---

[1]     Bui testified that he was a passenger in a motor vehicle accident in 2011. He testified that he experienced neck pain after the accident for which he sought chiropractic care.

back region. [He] mentioned when sitting down in class, he has achy pain in the low back with shooting sensation up the mid back region." Under plan/treatment, Huynh stated: "Patient was advised to get the MRI Thoracic Spine as recommended by the Pain Management Specialist [Dr. Alj Sparrow] and continue care with the specialist." On June 20, Bui had an MRI of his thoracic spine which revealed "no evidence of disc protrusions/herniations."

On July 12, Bui was seen again by Dr. Sparrow. Dr. Sparrow noted:

Unfortunately, Mr. Bui continues to complain of low back pain radiating to mid back. The patient is status post MRI of the thoracic spine which revealed no disc herniation. The patient is status post MRI of the lumbar spine performed on 10/04/2016 which revealed at L4-5 a protrusion-subligamentous disc herniation extending into the epidural fat and indenting the thecal sac. At L5-S1 there is an acute/subacute protrusion-subligamentous disc herniation extending into the epidural fat and indenting the thecal sac. Based on history, MRI report and physical exam and the continued complaints of pain and radiculopathy symptoms by Mr. Bui, I believe he can benefit from a Lumbar Epidural Steroid Injection at L4-5, at this level for a series of three injections.

Bui ultimately received two epidural steroid injections (ESI). At Bui's last visit on October 17, 2017, Dr. Sparrow noted, "Fortunately, Mr. Bui states that his low back pain has been reduced status post a lumbar ESI performed on 09/26/2017. I believe he can benefit from home exercise and stretching program as well as follow up with Dr. Nancy Huynh and continued physical therapy is also recommended."

At trial, Dr. Sparrow testified that she reviewed some of Bui's medical records and his MRI reports and that, based on her review, she believed that ESIs were the

best option for treating Bui's back pain and that they were medically necessary. She testified that the two ESIs Bui had received temporarily alleviated his pain but that the ESIs were not a permanent solution for herniated disks. Regarding future medical treatment, Dr. Sparrow testified:

> COUNSEL: Okay. How many do you anticipate, based upon your review of his records, your review of how he did with the MRI, and how he did with ESI injections he received, what is your professional medical opinion as to how many ESI injections he is going to need and for how long?
>
> DR. SPARROW: He could possibly need one to three injections per year if his pain comes back and is increased. And it could be -- it could be for -- until he's 60, 70.

Medical records admitted into evidence showed that the two ESIs Bui received cost a total of $20,973.00.

After both sides rested, Lara moved to exclude future medical care expenses from the jury charge on the grounds that Dr. Sparrow did not testify that the expenses for future medical care were reasonable to a degree of medical certainty or probability or that Bui's alleged need for future medical care was caused by the accident. The trial court denied the motion.

The jury returned a verdict in favor of Bui on his negligence claim and awarded him the following damages: (1) $36,488.00 in past medical care expenses,[2]

---

[2] The bills for Bui's past medical expenses admitted into evidence included the following: 1st Choice Accident & Injury in the amount of $5,990.00; Healthplus

5

(2) $150,000.00 in future medical care expenses, and (3) $13,512.00 in future physical impairment. The trial court entered final judgment based on the jury's verdict on June 8, 2021.

Lara moved for judgment notwithstanding the verdict requesting that the trial court set aside the jury's verdict regarding some of Bui's past medical care expenses and all his future medical care expenses because Bui produced insufficient evidence at trial to support those damages. Specifically, she argued there was no evidence to support the jury's finding of $150,000.00 in future medical care expenses because Bui's expert, Dr. Sparrow, never testified that the future medical care she recommended was required as a result of the motor vehicle accident. She further argued that Dr. Sparrow's testimony regarding past medical care treatment at Complete Pain Solutions and the future medical care treatment she recommended was conclusory, and that such conclusory testimony cannot support a judgment. The trial court denied Lara's motion. This appeal followed.

## Discussion

Lara contends that the evidence is legally and factually insufficient to support the jury's award of $20,973.00 for past medical care expenses for treatment at Complete Pain Solutions and its award of $150,000.00 for future medical care

---

Imaging in the amount of $1,100.00; ProHealth Medicine in the amount of $550.00; Memorial MRI & Diagnostic, LLC in the amount of $7,875.00; and Complete Pain Solutions in the amount of $20,973.00.

expenses because Bui did not provide any expert testimony that the motor vehicle accident caused his complained-of back injuries.[3] In response, Bui asserts that Lara failed to preserve her challenge to the factual sufficiency of the evidence supporting the jury's findings because she failed to move for a new trial. He further argues that the evidence is sufficient to support the jury's findings that Lara caused the accident resulting in his injuries for which he required past medical care and which would require future medical treatment.

## A. Standard of Review

In conducting a legal sufficiency review, "we must consider evidence favorable to the finding if the factfinder could reasonably do so and disregard evidence contrary to the finding unless a reasonable factfinder could not." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). We then consider the evidence in the light most favorable to the challenged findings and indulge every reasonable inference that supports the findings. *George Joseph Assets, LLC v. Chenevert*, 557 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). When an appellant attacks a finding on an issue on which she did not have the burden of proof, the appellant must demonstrate that no evidence supports the adverse finding. *Id*. Evidence is legally insufficient to support a jury finding when

---

[3]     On appeal, Lara does not challenge the remainder of the award for past medical care expenses totaling $15,515.00 or the award of $13,512.00 for future physical impairment.

7

(1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Shields Ltd. P'ship*, 526 S.W.3d at 480.

A party attacking the factual sufficiency of an adverse finding on an issue on which she had the burden of proof must demonstrate on appeal that the adverse finding is so against the great weight and preponderance of the evidence that the judgment should be set aside. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). A verdict can be set aside "only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id*.

## B. Factual Sufficiency Challenge

As a preliminary matter, we address Bui's assertion that Lara waived her challenge to the factual sufficiency of the evidence to support the jury's findings.

Texas Rule of Civil Procedure 324 requires a party to move for a new trial before it may complain on appeal about the factual sufficiency of the evidence supporting a jury verdict. *See* TEX. R. CIV. P. 324(b)(2); *J.M. Krupar Constr. Co. v. Rosenberg*, 95 S.W.3d 322, 336 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Here, Lara did not move for a new trial but rather moved only for a judgment

notwithstanding the verdict asking that the trial court set aside the verdict and "render judgment." Because Lara did not file a motion for new trial, we cannot consider her complaint on appeal that the evidence was factually insufficient to support the jury's findings. *See J.M Krupar Constr.*, 95 S.W.3d at 336; *see also* TEX. R. APP. P. 33.1(a).

## C.    Legal Sufficiency Challenge

Lara contends that there is legally insufficient evidence to support the jury's verdict. Specifically, she argues that there is no evidence to support the jury's award of $20,973.00 in past medical care expenses for treatment at Complete Pain Solutions or its award of $150,000.00 for future medical care expenses because Bui did not provide any expert testimony that his back injuries were caused by the accident. Bui responds that Dr. Sparrow was not required to testify explicitly about causation because Bui's testimony and the medical records on which Dr. Sparrow relied established a strong, logically traceable connection between the accident, the back pain, and the ESI treatment.

### 1. Applicable Law

To prevail on a negligence cause of action, Bui must establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). "Establishing causation in a personal injury case requires a plaintiff to 'prove that the conduct of the defendant

9

caused an event and that this event caused the plaintiff to suffer compensable injuries.'" *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). In a typical negligence case, "the plaintiff must establish two causal nexuses: (1) between the defendant's negligent act and the occurrence; and (2) between the occurrence and the injuries of which the plaintiff complains." *Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 684 (Tex. App.—Dallas 2000, no pet.) (citing *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984)). Specifically, "when an accident victim seeks to recover medical expenses, he must show 'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'" *JLG Trucking*, 446 S.W.3d at 162 (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007)).

Expert testimony is generally necessary to establish causation of medical conditions outside the common knowledge and experience of lay persons. *See Guevara*, 247 S.W.3d at 665. In limited cases, however, lay testimony may support a causation finding that links an event with a person's physical condition. *Id.* at 666. "This exception applies only in those cases in which general experience and common sense enable a layperson to determine the causal relationship with reasonable probability." *Kelley v. Aldine Indep. Sch. Dist.*, No. 14-15-00899-CV, 2017 WL 421980, at *2 (Tex. App.—Houston [14th Dist.] Jan. 31, 2017, pet. denied) (mem.

op.) (citing *Guevara*, 247 S.W.3d at 666; *Morgan*, 675 S.W.2d at 733). In such cases, "lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Id.* (quoting *Morgan*, 675 S.W.2d at 733).

## 2.    No Expert Testimony Regarding Causation

Lara argues that Bui's complained-of injuries required expert witness testimony to establish causation. She asserts that his diagnoses of cervicalgia, lumbalgia, lumbar radiculopathy, and two herniated discs are not the type of basic injuries identified in *Guevara* for which expert testimony regarding the causal connection between an occurrence and a physical condition is unnecessary. She argues that because Bui did not provide expert testimony of causation, he cannot recover for medical expenses for treatment of these diagnosed injuries.

The Fourteenth Court of Appeals' decision in *Hills v. Donis*, No. 14-18-00566-CV, 2021 WL 507306 (Tex. App.—Houston [14th Dist.] Feb. 11, 2021, pet. denied) (mem. op.) and our decision in *Sanchez v. Leija*, No. 01-19-00165-CV, 2020 WL 7349094 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet.) (mem. op.) are instructive. In *Hills*, the plaintiffs sued the defendant following an automobile accident alleging that her negligence caused the accident and their soft-tissue injuries. *See Hills*, 2021 WL 507306, at *1. Medical bills admitted into evidence for three of the five plaintiffs included diagnoses of cervical radiculitis, lumbar

11

radiculitis, thoracalgia, cervical intervertebral disc (IVD) displacement without myelopathy, lumbar IVD displacement without myelopathy, thoracic IVD displacement without myelopathy, cervical discogenic pain, lumbar discogenic pain, disc herniation, cervical disc disorder, thoracic disc disorder, and lumbar disc disorder. *See id*.

Noting that "[e]xpert testimony is generally necessary to establish causation of medical conditions that are 'outside the common knowledge and experience of jurors,'" the court stated that the types of injuries for which the three plaintiffs sought compensation—i.e., cervical IVD displacement, lumbar IVD displacement, thoracic IVD displacement, cervical discogenic pain, lumbar discogenic pain, disc herniation, cervical disc disorder, lumbar disc disorder, thoracic disc disorder, cervical radiculitis, lumbar radiculitis, thoracalgia, and lumbalgia—were neither common nor basic. *See id*. at *4. Thus, the court concluded, the plaintiffs' claims did not fall within the kinds of "basic" injuries identified in *Guevara* for which expert testimony regarding the causal connection between an occurrence and a physical condition is unnecessary. *Id.* (citing *Guevara*, 247 S.W.3d at 667).[4]

---

[4]    In *Guevara*, the Texas Supreme Court explained that "if [the injured motorist] had been pulled from a damaged automobile with overt injuries such as broken bones or lacerations, and undisputed evidence which reasonable jurors could not disbelieve showed that he did not have such injuries before the accident, then the physical conditions and causal relationship between the accident and the conditions would ordinarily be within the general experience and common knowledge of laypersons." *Guevara v. Ferrer*, 247 S.W.3d 662, 667 (Tex. 2007).

Bui argues that while *Hills* is instructive it is nevertheless distinguishable for several reasons. He notes that, in *Hills*, one car was totaled, one car "sustained substantial damage," and the third car suffered "minimal damage" so that the driver was able to drive the vehicle home with three passengers and himself. Here, in contrast, both Bui's car and Lara's car were towed from the scene of the accident. Bui also points to the fact that "[n]o airbags deployed in any of the vehicles" in *Hills* while, in this case, his airbag deployed. Third, he asserts that the plaintiffs in *Hills* relied entirely on their own testimony and medical records whereas in this case Bui offered his own testimony, his medical records, and the testimony of Dr. Sparrow. Finally, Bui argues that *Hills* is distinguishable from this case because of the temporal proximity between the accident and the injuries.

To the extent there is any difference between the degree of damage to the vehicles involved in the accident in *Hills* and this case, as well as the fact that the airbags did not deploy in the vehicles in *Hills*, but the airbag deployed in Bui's car, these distinctions do not alter the fact that Bui's injuries are not the types of basic injuries for which expert testimony regarding causation was unnecessary. *See Guevara*, 247 S.W.3d at 667. Bui's assertion that the plaintiffs in *Hills* relied solely on their own testimony and medical records, whereas, in this case, Dr. Sparrow testified at trial, is similarly unavailing because, as discussed below, Dr. Sparrow did not testify that Bui's injuries were caused by the accident. Finally, as to the

13

temporal proximity between the accident and the plaintiffs' injuries in *Hills*, one of the plaintiffs testified that she sought chiropractic care to address her ankle injury three days after the accident. Here, Bui sought treatment for his back pain four days after the accident. However, temporal proximity alone cannot support an inference of medical causation. *Guevara*, 247 S.W.3d at 667; *W. Invs.*, 162 S.W.3d at 551 (stating proximate causation cannot be shown through conjecture, guess, or speculation). Rather, evidence of temporal proximity only raises a suspicion that the event caused the condition but is not legally sufficient to support a finding of causation. *See Guevara*, 247 S.W.3d at 668.

In *Sanchez*, Sanchez sued Leija and his business following a motor vehicle accident alleging that Leija caused his medical injuries and property damage. *See* 2020 WL 7349094, at *1. The trial court granted Leija's no-evidence motion for partial summary judgment regarding medical causation, and Sanchez appealed. *See id.* We concluded that the types of injuries for which Sanchez sought compensation—ligament sprain of the thoracic spine and lumbar spine, back spasms, lumbar radiculopathy, and increased symptoms of post-traumatic stress disorder— were neither common nor the type of "basic" injuries identified in *Guevara. See id.* at *3. Because Sanchez did not provide expert testimony and neither the medical records nor billing affidavits admitted into evidence raised a fact question with respect to causation, we held that Sanchez had failed to produce more than a scintilla

14

of competent evidence on the element of causation of his medical injuries and the trial court did not err in granting summary judgment in favor of Leija. *See id.* at *3–4.

Similar to the complained-of injuries in *Hills* and *Sanchez,* Bui was diagnosed with cervicalgia, lumbalgia, lumbar radiculopathy, and two herniated discs and sought compensation for the past and future medical expenses for treatment of the diagnosed injuries. Bui's injuries are neither common nor the type of basic injuries for which expert testimony regarding the causal connection between an occurrence and a physical condition is unnecessary. *See Hills*, 2021 WL 507306, at *4; *Sanchez*, 2020 WL 7349094, at *3; *see also McGee v. Tatum*, No. 05-21-00303-CV, 2022 WL 17248174, at *5 (Tex. App.—Dallas Nov. 28, 2022, no pet.) (mem. op.) (concluding plaintiff's diagnoses of bulging discs, herniated disc, disc height reduction, mild DDD,[5] mild central canal stenosis, mild neuroforaminal stenosis, narrowing to neuroforamina, traumatic cervical strain, cervical neuritis, traumatic lumbar strain, lumbar neuritis, cervicogenic cephalgia, intervertebral disc disorders with radiculopathy, thoracalgia, and cervicalgia were not terms within common knowledge and experience of jurors and cause of soft-tissue back and neck injuries

---

[5] The court noted in a footnote that "[a]ppellant's attorney told the jury, and stated in appellant's brief, that 'DDD' stands for 'degenerative disc disease,' but there is no evidence in the record of the abbreviation's meaning." *McGee v. Tatum*, No. 05-21-00303-CV, 2022 WL 17248174, at *5 n.2 (Tex. App.—Dallas Nov. 28, 2022, no pet.) (mem. op.).

were medical conditions outside common knowledge and experience of jurors); *Kelley*, 2017 WL 421980, at *3 ("The types of injuries for which Kelley sought compensation—multiple disc herniations, cervical radiculitis, and lumbar radiculopathy—are neither common nor basic," and expert medical testimony was required to prove casual connection between work-related fall and claimed injuries); *City of Laredo v. Garza*, 293 S.W.3d 625, 632 (Tex. App.—San Antonio 2009, no pet.) (plaintiff's complaint of back pain one month after on-the-job-accident required expert medical testimony to establish causal link to accident).

Bui acknowledges on appeal that Dr. Sparrow did not testify about causation. Citing to *Guevara*, Bui argues instead that Dr. Sparrow did not need to testify explicitly about causation because Bui's own testimony and his medical records established a strong, logically traceable connection between the accident, his back pain, and the ESI treatment. We disagree.

There is no evidence that Bui sustained overt injuries such as broken bones or lacerations, or that he experienced objective physical symptoms shortly after the accident. Thus, this case is not one to which the exception noted in *Guevara* applies—that is, it is not a case in which general experience and common sense enable a layperson to determine the causal relationship with reasonable probability. Bui needed expert testimony to establish a causal connection between the accident and his claimed injuries and his own testimony was insufficient to establish

16

causation. *See Guevara*, 247 S.W.3d at 663; *McGee*, 2022 WL 17248174, at *7; *Hills*, 2021 WL 507306, at *4; *Kelley*, 2017 WL 421980, at *3; *Garza*, 293 S.W.3d at 632–33.

Bui also relies on his medical records as evidence of a causal connection between the accident and his injuries. Bui directs us to the following statement in Huynh's chart notes: "Due to clinical exams and diagnostic studies, it is my personal opinioned [sic] that Mr. Bui['s] injuries was the direct cause of the accident sustained on 9/2/2016." To constitute competent evidence of causation, a medical expert's opinion must rest in reasonable medical probability. *Burroughs Wellcome*, 907 S.W.2d at 500. "This rule applies whether the opinion is expressed in testimony or in a medical record, as the need to avoid opinions based on speculation and conjecture is identical in both situations." *Id.* Huynh's opinion is not competent evidence of causation because her opinion is conclusory. *See id.* An expert's bare proclamation that this one event caused another is not enough to establish causation; "the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 526, 539–40 (Tex. 2010). Huynh's note does not provide the necessary link between Bui's diagnosed injuries and the motor vehicle accident. Absent this link, the note is unreliable speculation, which does not constitute legally sufficient evidence to support the jury's verdict. *See id.* at 532 ("When the evidence offered to prove a vital

fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.").

### 3.    Medical Expenses

Lara contends that the evidence was legally insufficient to support the jury's award of $20,973.00 for the two ESIs that Bui received in the past and its award of $150,000.00 for Bui's alleged need for future ESIs. Bui argues that the evidence was sufficient to support the jury's awards for past and future medical care expenses.

Dr. Sparrow testified that she reviewed some of Bui's medical records and his MRI reports and that, based on her review, she believed that ESIs were the best option for treating Bui's back pain and that they were medically necessary. She testified that the two ESIs Bui received temporarily alleviated Bui's pain but that the ESIs were not a permanent solution for herniated disks. Regarding future medical treatment, Dr. Sparrow testified:

COUNSEL:          Okay. How many do you anticipate, based upon your review of his records, your review of how he did with the MRI, and how he did with ESI injections he received, what is your professional medical opinion as to how many ESI injections he is going to need and for how long?

DR. SPARROW:  He could possibly need one to three injections per year if his pain comes back and is increased. And it could be – it could be for – until he's 60, 70.

"[W]hen an accident victim seeks to recover medical expenses, []he must show both 'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'" *JLG Trucking*, 466 S.W.3d at 162 (quoting *Guevara*, 247 S.W.3d at 669). Moreover, to constitute evidence of medical causation, an expert opinion must rest on reasonable medical probability. *Burroughs Wellcome*, 907 S.W.2d at 500. Reasonable probability is determined by the substance and context of an expert opinion, rather than the use of any particular words. *Id.* Where the substance of an expert's testimony establishes only a mere possibility, rather than a reasonable probability, of causation, it is no evidence of causation. *See Schaefer v. Tex. Empl'rs Ins. Ass'n*, 612 S.W.2d 199, 204–05 (Tex. 1980). Further, to recover future medical expenses, a plaintiff must provide evidence showing a reasonable probability that the medical expenses will be incurred in the future, and the probable cost of such expenses. *Gunn v. McCoy*, 489 S.W.3d 75, 112 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

To avoid being conclusory or speculative, Dr. Sparrow was required, to a reasonable degree of medical probability, to explain how and why the accident caused Bui's injuries. *See Jelinek*, 328 S.W.3d at 536. Dr. Sparrow's testimony did not establish that Bui's injuries and his need for the two ESIs were proximately caused by the accident. Moreover, her testimony regarding Bui's need for future medical care—"[h]e could possibly need one to three injections per year if his pain

19

comes back and is increased"—merely suggested the possibility of a need for future treatment, rather than a probability, and was conditioned on Bui's pain returning and increasing. *See Presswood v. Goehring*, No. 01-04-00134-CV, 2005 WL 1365188, at *5 (Tex. App.—Houston [1st Dist.] June 9, 2005, no pet.) (mem. op.) (concluding medical expert's testimony that plaintiff "potentially" might need future medical treatment following motor vehicle accident and that expert would not recommend plaintiff throw away medical device because she "could perhaps" continue to use it did not meet standard of "all reasonable probability"); *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (concluding that, absent testimony establishing that in all reasonable probability patient would require future medical care and cost of such care, evidence was legally insufficient to support jury's award of $10,000 for future medical care and expenses); *see also Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 905–06 (Tex. App.—Texarkana 2004, pet. denied) (reversing future medical care award as too speculative where there was no testimony that plaintiff would require any additional procedures in future beyond mere possibilities).

We conclude that the evidence is legally insufficient to support the award to Bui of $20,973.00 for past medical care expenses and $150,000.00 for future medical care expenses. We therefore sustain Lara's issue.

## Conclusion

We reverse the portion of the trial court's judgment awarding $20,973.00 in past medical care expenses for the two ESIs Bui received and render a judgment for $15,515.00 as damages for Bui's past medical care expenses. We reverse the portion of the trial court's judgment awarding $150,000.00 in future medical care expenses and render judgment that Bui take nothing for future medical care expenses. We further reverse the award of prejudgment interest, and we remand the case to the trial court for the limited purpose of calculating the award of prejudgment interest based on the modified award of damages. We affirm the trial court's judgment in all other respects.

Amparo Guerra
Justice

Panel consists of Justices Goodman, Hightower, and Guerra.